**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benjamin J. CREW,
Defendant–Appellant.**

**No. 89–2632
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1990.

982

Will Gray, Houston, Tex., for defendant-appellant.

Debra A. Carr, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

PER CURIAM:

## I.

Benjamin Crew was convicted on two counts of distributing cocaine within 1000 feet of a public elementary school in violation of 21 U.S.C. §§ 841(a)(1) and 845a. Crew appeals the trial court's enhancement of his sentence pursuant to 21 U.S.C. § 845a. We affirm.

## II.

Benjamin Crew lived directly across the street from the schoolyard of the Frederick Douglas Elementary School in Cleveland, Texas. On two separate evenings, Crew sold "crack" cocaine to Arthur and Shirley Fletcher from his residence. The Fletchers were paid informers for the Cleveland Police Department. Crew was arrested, charged and convicted on two counts of distributing cocaine within 1000 feet of elementary school, in violation of 21 U.S.C. §§ 841(a)(1) and 845a. Section 845a (alternatively, the schoolyard statute) provides for enhanced penalties upon conviction of selling controlled substances within 1000 feet of an elementary or secondary school.

On appeal, Crew's attorney submitted an *Anders* brief.[1] Because the schoolyard statute has not been substantively considered in this Circuit, Crew's attorney was ordered to submit a supplemental brief discussing the due process and equal protection implications of the schoolyard statute and whether the statute requires proof of knowledge of the proximity of the school.

## III.

■ Section 845a was enacted to create a "drug-free zone" around our schools and to send a clear "signal to drug dealers that we will not tolerate their presence near our schools." 130 Cong.Rec. S559 (daily ed. January 31, 1984) (statement of Sen. Paula Hawkins). The statute allows a sentencing court to impose a prison term of up to twice the length of time that is authorized for the sale of controlled substances under 21 U.S.C. § 841(a)(1). The language of the schoolyard statute is unambiguous. It states in pertinent part:

Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school ... is ... punishable (1) by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense.

Crew's supplemental brief discusses several due process and equal protection chal-

**1.** The Supreme Court, in *Anders v. California,* established the requirement that an indigent defendant's appointed counsel on appeal must submit a brief detailing possible trial court errors before concluding that an appeal is meritless. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

lenges that have been raised against the schoolyard statute, all of which have been unsuccessful. He apparently does not urge that this court adopt a contrary position. We therefore discuss these challenges in summary fashion.

First, Crew notes that the schoolyard statute has been challenged on due process grounds because it does not allow a defendant to escape its enhanced penalty by showing that the defendant's drug related activity did not affect the school children which the statute was designed to protect. In essence, Crew claims that the statute creates an "irrebutable presumption" that is not rationally related to the government's legitimate goal of protecting school children from the dangers of drugs and drug related crime. He claims that because the cocaine sales for which he was convicted took place well after school hours there was no danger of an adverse effect on the children who attended the Frederick Douglas School. Like the other courts which have examined this claim, we find it without merit. *See United States v. Jones,* 779 F.2d 121 (2nd Cir.1985), *United States v. Agilar,* 779 F.2d 123 (2nd Cir.1985). "The presumption that narcotics sales in the vicinity of an elementary school ... endanger the students and thus should be subject to stiffer penalties is substantially related to Congress's interest in shielding these children from the evils of the drug trade." *United States v. Nieves,* 608 F.Supp. 1147, 1149 (S.D.N.Y.1985). The applicability of § 845a does not depend on the direct presence of school children during the offense. The schoolyard statute goal of creating a drug free zone around our nation's schools could not be realized if the protection the statute affords school children ends when the final bell rings each day. The elementary and secondary schools are places where children congregate before and after school hours. Moreover, any drug related activity in the vicinity of a school increases the likelihood that drugs would become accessible to the children who attend the school. If the drug seller uses a place within the protected area to carry on illegal activity, his customers can decide to buy drugs while children

are present. In short, both the stated goal of § 845a and its language make its applicability practically absolute. Only under extraordinary circumstances have similar state schoolyard statutes been held not to apply to drug sales in close proximity to an elementary or secondary school. *See e.g., State v. Ogar,* 229 N.J.Super. 459, 551 A.2d 1037 (A.D.1989). No such circumstances are present in this case.

■ Second, Crew discusses a claim that § 845a violates the due process clause because it provides for an increased penalty without regard to the violator's knowledge of the proximity of the school. This claim has been rejected by a number of courts. *United States v. Falu,* 776 F.2d 46, 49–50 (2d Cir.1985); *United States v. Cunningham,* 615 F.Supp. 519, 521 (S.D.N.Y.1985). However, we need not reach this issue here since Crew is bound to have known of the proximity of the very obvious school located in plain view so near to his residence. Crew's *Anders* brief concedes that Crew knew of the proximity of the school and he stipulated to the location of the school at trial.

■ Third, Crew notes that the schoolyard statute has been challenged on equal protection grounds for being both overinclusive—since it applies to transactions between adults—and underinclusive—since it does not apply to transactions in other areas such as play grounds where school children congregate. Since selling cocaine is surely not an activity that is considered fundamental and this particular claim does not involve a class of persons entitled to constitutional protection, § 845a need only be rationally related to a legitimate government interest to withstand this equal protection challenge. As discussed above, providing increased penalties for drug sales near schools is more than rationally related to the legitimate goal of protecting our nation's youth from drug related crime. In addition, we note that Congress, in an apparent answer to the challenge of underinclusiveness raised by Crew, recently amended § 845a to include drug sales within 100 feet of a "playground, youth center, public swimming pool and video arcade facility." 21 U.S.C. § 845a (amended 1988).

Fourth, Crew notes that the schoolyard statute has been challenged on equal protection grounds because it has a disproportionate impact on members of racial minorities who are more likely to live in densely populated urban areas in closer proximity to elementary schools. Even assuming the accuracy of this unsubstantiated allegation, we conclude, like the other courts that have entertained it, that it fails to establish a valid equal protection claim. More than disparate impact must be shown. It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). Crew, like others who have raised this claim, has made no such showing. *See Nieves*, 608 F.Supp. at 1150–51.

Finally, Crew urges that the facts of this case suggest relief from the enhanced penalties of § 845a. The facts of this case, however, are exactly what the schoolyard statute was designed to reach and deter. Crew sold cocaine from his house across the street from a clearly visible public grammar school. It is common knowledge that once a house is known to be a source of drugs, the neighborhood in which the house is located begins to change. The area becomes "hostage" to the drug dealer who uses the house as a base from which to supply users. The presence of a "crack house" exposes school children to all the dangers that drug related crime engenders. This is precisely the type of environment around our nation's schools that Congress sought to penalize by enacting § 845a.

## IV.

The enhanced sentence imposed pursuant to 21 U.S.C. § 845a is

AFFIRMED.