[No. 58522-9.   En Banc.   November 12, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. OTONIEL LEYVE
CORIA, ET AL, *Respondents*.

*Jeffrey C. Sullivan,* Prosecuting Attorney, and *Steven R. Keller* and *Kenneth L. Ramm,* Deputies, for petitioner.

*Contreras-Trejo & Trejo* and *Myrna Contreras-Trejo,* for respondents Coria and Hernandez.

*Paul J. Wasson,* for respondents Flores and Muns (appointed counsel for appeal).

*Michael W. Lynch,* for respondent Price.

*Thomas Bothwell* and *Prediletto, Halpin, Scharnikow, Bothwell & Smart, P.S.,* for respondent Suarez.

*Katherine S. Knox* on behalf of Washington Defender Association, amicus curiae for respondents.

GUY, J. — The defendants in this consolidated appeal received enhanced sentences for narcotics trafficking. The sentences were imposed pursuant to RCW 69.50.435 and RCW 9.94A.310(5), which provide for sentence enhancement when a drug-related offense is committed within 1,000 feet of a school bus route stop. The Court of Appeals reversed the sentence enhancements on the grounds that the statutes, as applied to school bus route stops, are unconstitutional. We reverse the Court of Appeals.

## I

Otoniel Coria, Ricardo Flores, Pablino Hernandez, Eldon Muns, Eric Price, and Juan Suarez were separately arrested

at various locations in Yakima and charged with either delivery of cocaine or possession of cocaine with intent to deliver, or both. At the trial of each defendant, the State established that the crime occurred within 1,000 feet of a school bus route stop. Three different school bus route stops in Yakima are involved, located at the intersections of 6th and D, 2nd and Pine, and 8th and Central Streets. There are no markings or signs indicating there are school bus route stops at these locations. According to the director of transportation for the Yakima School District and the Central Washington Co-op, Gary Baffaro, the locations of the stops are indicated on a master map he prepares for submission to the office of the Superintendent of Public Instruction (SPI). Mr. Baffaro explained that he prepares the master map by taking a regular map of the city of Yakima and placing a clear piece of paper over it. Then he and the bus drivers draw the school bus routes and stops on the paper. This "tracing", as it is called, with the map of Yakima, is sent to the state transportation director's office for review, and from there to SPI, which uses the tracing and map to calculate reimbursement to the school district for transportation expenses. After SPI has calculated the reimbursement, the map and tracing are returned to Mr. Baffaro's office.

In addition to stops where several students are picked up, the school buses also make a number of "door-to-door" stops for the benefit of handicapped students or other students who need to be picked up at their homes. These stops may be added to the bus route after the master map has been submitted to SPI. Therefore, because the master map is not revised after it is submitted to SPI, the added door-to-door stops are not indicated on it. Mr. Baffaro and his staff keep track of the door-to-door stops by using a logbook. Mr. Baffaro testified that anyone can learn the locations of any school bus route stop or of all the stops by calling his office.

A list of school bus route stop locations is published in the Yakima Herald-Republic newspaper immediately prior to the opening of school in the fall. See Brief of Amicus

Curiae Washington Defender Association app. 3 (copy of published list of school bus route stops, published in Yakima Herald-Republic Sept. 3, 1989). This list contains the locations of all those stops and routes known to exist at the time of its publication. Since door-to-door stops may be added later, this published list, like the master list submitted to SPI, may be incomplete.

The locations of the school bus route stops at 6th and D, 2nd and Pine, and 8th and Central Streets were among those published in the newspaper prior to the beginning of school in the fall of 1989. See Brief of Amicus Curiae Washington Defender Association app. 3. The locations were also among those indicated on the map the school district transportation director's office submitted to SPI.

Each defendant in the present case was separately convicted of delivery of cocaine or possession of cocaine with the intent to deliver, or both. Because the crimes were committed within 1,000 feet of school bus route stops, the defendants' sentences were enhanced pursuant to RCW 9.94A.310(5) and RCW 69.50.435. Each defendant appealed, and the appeals were consolidated. The Court of Appeals reversed the defendants' sentences on the grounds that the statutory provision requiring sentence enhancement for committing a drug-related crime within 1,000 feet of a school bus route stop is unconstitutionally vague and deprives defendants of the equal protection of the laws. *State v. Coria*, 62 Wn. App. 44, 813 P.2d 584 (1991). This court granted the State's petition for review.

## II

RCW 69.50.401(a) provides a general prohibition against drug dealing. It provides that "[e]xcept as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." The statute primarily at issue in this case is RCW 69.50.435, which provides for an enhancement of the penalty imposed for violating RCW 69.50.401(a), if that violation occurred within 1,000 feet of certain places

such as schools or school bus route stops. Specifically, former RCW 69.50.435(a)[1] states:

> Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under that subsection to a person in a school or on a school bus or within one thousand feet of a school bus route stop designated by the school district or within one thousand feet of the perimeter of the school grounds is punishable by a fine of up to twice the fine otherwise authorized by this chapter . . . or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter . . . or by both such fine and imprisonment.

(These places where drug-related activity gives rise to an enhanced penalty upon conviction will henceforth be referred to as "drug free zones".) RCW 69.50.435 also provides that it is no defense to a prosecution for a violation of this section that the defendant was unaware the prohibited activity occurred inside a drug free zone, or that no children were present. RCW 69.50.435(b), (c). The statute also defines "[s]chool bus route stop" as "a school bus stop as designated on maps submitted by school districts to the office of the superintendent of public instruction". RCW 69.50.435(f)(3).

Whereas RCW 69.50.435 authorizes in general terms an enhancement of the penalty for drug dealing in a drug free zone, RCW 9.94A.310(5) renders that enhancement more specific. Under RCW 9.94A.310(5), 24 months must be added to the presumptive sentence for any violation of RCW 69.50-.435.

### III

The defendants' first contention is that RCW 69.50.435 is unconstitutionally vague as applied to school bus route stops. We disagree.

---

[1]The quoted language is that of RCW 69.50.435 as it was originally enacted in 1989. It was under that version of the statute that the defendants in the present case were convicted. Since its enactment, the Legislature has amended RCW 69.50.435 three times. Laws of 1991, ch. 32, § 4; Laws of 1990, ch. 244, § 1; Laws of 1990, ch. 33, § 588. None of the amendments affected the provision regarding school bus route stops.

■ The first step in any vagueness challenge "is to determine if the statute in question is to be examined as applied to the particular case or to be reviewed on its face." *Spokane v. Douglass*, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990). If the statute does not involve First Amendment rights, then the vagueness challenge is to be evaluated by examining the statute as applied under the particular facts of the case. *Douglass*, at 182. Here, the challenged statute, RCW 69.50-.435, does not implicate any First Amendment rights. Therefore, the defendants' vagueness challenge must be evaluated in light of how the statute has been applied in their individual cases.

■ ■ The fundamental principle underlying the vagueness doctrine is that the Fourteenth Amendment requires citizens be afforded fair warning of proscribed conduct. *Douglass*, at 178. A statute is presumed to be constitutional, and the person challenging a statute on vagueness grounds has the heavy burden of proving vagueness beyond a reasonable doubt. *Douglass*, at 178. The challenger must show, beyond a reasonable doubt, that either (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *Douglass*, at 178.

■ The requirement of sufficient definiteness "protects individuals from being held criminally accountable for conduct which a person of ordinary intelligence could not reasonably understand to be prohibited." *Douglass*, at 178. Accordingly, a statute is unconstitutional if it "forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application.' " *Douglass*, at 179 (quoting *Burien Bark Supply v. King Cy.*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986)). This test does not demand "impossible standards of specificity or absolute agreement", and permits some amount of imprecision in the language of a statute. *Douglass*, at 179.

■ The second requirement under the vagueness doctrine, the requirement of ascertainable standards, is intended to protect against "arbitrary, erratic, and discriminatory enforcement." *Douglass*, at 180. A statute should be held to supply adequate standards unless it "proscribes conduct by resort to 'inherently subjective terms' " or by inviting an inordinate amount of police discretion. *Douglass*, at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)).

■ Applying these principles, we reject the defendants' argument that RCW 69.50.435 is unconstitutionally vague. The statute does not forbid conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. Nor does it create a risk of arbitrary enforcement by the use of inherently subjective terms or by inviting an inordinate amount of police discretion. The statute in clear terms enhances the penalty for dealing drugs within 1,000 feet of school bus route stops, and it clearly defines such stops as those designated on the maps school districts provide to SPI.

The Court of Appeals' reasons for declaring RCW 69.50-.435 unconstitutionally vague were centered around concerns as to how an individual defendant is to know on a specific occasion that his or her conduct is of the type proscribed. On the one hand, the court appears to have been concerned that drug dealers can be subjected to the penalty enhancement when they were unaware they were dealing drugs inside a drug free zone around a school bus route stop.[2] On the other hand, the court appears to have been concerned with what it perceived as unreasonable difficulties in ascertaining the locations of the stops. Neither concern provides a sound basis for declaring RCW 69.50.435 unconstitutionally vague.

---

[2]In explaining why RCW 69.50.435 fails to provide fair notice, the Court of Appeals stated that "[i]f the arresting officer cannot ascertain the distance at the time of the arrest, it is unreasonable to expect a particular defendant to have that knowledge at the time of the sale." *State v. Coria*, 62 Wn. App. 44, 50, 813 P.2d 584 (1991).

■ First, the due process requirement of fair notice does not require drug dealers to have known they were dealing drugs inside a drug free zone. The federal counterpart to RCW 69.50.435 is former 21 U.S.C. § 845a(a),[3] which generally provided for a penalty enhancement for drug dealing occurring within 1,000 feet of a school grounds. Convictions under former section 845a(a) have been upheld in every federal circuit that has addressed the issue, which includes most circuits, and in the face of a variety of constitutional challenges. *E.g., United States v. Holland*, 810 F.2d 1215, 1223 (D.C. Cir.), *cert. denied*, 481 U.S. 1057 (1987); *United States v. Falu*, 776 F.2d 46 (2d Cir. 1985); *United States v. Campbell*, 935 F.2d 39 (4th Cir.), *cert. denied*, 116 L. Ed. 2d 287 (1991); *United States v. Crew*, 916 F.2d 980 (5th Cir. 1990); *United States v. Cross*, 900 F.2d 66, 69 (6th Cir. 1990); *United States v. Haynes*, 881 F.2d 586, 590 (8th Cir. 1989); *United States v. Pitts*, 908 F.2d 458, 461 (9th Cir. 1990); *United States v. Andersen*, 940 F.2d 593 (10th Cir. 1991). *But cf. United States v. Coates*, 739 F. Supp. 146 (S.D.N.Y. 1990) (section 845a held inapplicable where drug dealers were arrested on train within 1,000 feet of school). In particular, section 845a(a) has been repeatedly interpreted by the federal courts as not requiring that a defendant have specific knowledge of the proximity of a school. *E.g., United States v. Pitts, supra* at 461; *United States v. Haynes, supra* at 590; *United States v. Holland, supra* at 1223; *United States v. Cross, supra* at 69. For example, in *United States v. Falu, supra*, the court noted that although criminal offenses requiring no mens rea are generally disfavored, Congress can dispense with this requirement. *Falu*, at 49. Congress's purpose in enacting section 845a(a), the court explained, was clearly to deter drug

[3]Former 21 U.S.C. § 845a(a) was the codification of section 405A(a) of the Controlled Substances Penalties Amendments Act of 1984. Pub. L. No. 98-473, 98 Stat. 2069. In 1990, Congress redesignated section 405A(a), and this resulted in its recodification as 21 U.S.C. § 860. Pub. L. No. 101-647, § 1002(6), 104 Stat. 4827 (1990). It is also noteworthy that in 1988 Congress amended section 405A(a) so as to expand the category of drug free zones to include other areas frequented by children, such as playgrounds, youth centers and public swimming pools. Pub. L. No. 100-690, § 6458(a), 102 Stat. 4373 (1988).

distribution in and around schools, and "a requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design." *Falu*, at 50. The court emphasized that interpreting section 845a(a) as not requiring knowledge does not criminalize otherwise innocent activity because the statute enhances the penalty for "knowingly or intentionally" distributing a controlled substance, as prohibited under 21 U.S.C. § 841-(a)(1). *Falu*, at 50. The court further explained that although some schools are not clearly recognizable as such from all points within the 1,000-foot radius, "Congress evidently intended that dealers and their aiders and abettors bear the burden of ascertaining where schools are located and removing their operations from those areas or else face enhanced penalties." *Falu*, at 50.

Similarly, state courts that have examined state counterparts to RCW 69.50.435 have also upheld the lack of any mens rea requirement. *E.g., State v. Burch*, 545 So. 2d 279, 281 (Fla. Dist. Ct. App. 1989); *State v. Moore*, 782 P.2d 497, 504-05 (Utah 1989); *State v. Morales*, 224 N.J. Super. 72, 84-85, 539 A.2d 769, 775-76 (1987); *cf. Commonwealth v. Burns*, 240 Va. 171, 395 S.E.2d 456 (1990) (not discussing mens rea argument but upholding statute against due process and equal protection challenges). Finally, the Court of Appeals has held, in separate actions challenging RCW 69.50.435's constitutionality as applied to public parks and to school grounds, that the statute does not offend constitutional guaranties by denying a defense based on lack of knowledge. *State v. Carter*, 64 Wn. App. 90, 823 P.2d 523 (1992) (public parks); *State v. Lua*, 62 Wn. App. 34, 813 P.2d 588 (school grounds), *review denied*, 117 Wn.2d 1025 (1991).

In short, due process does not require drug dealers know they are within a drug free zone for purposes of the federal school yard statute or RCW 69.50.435. We therefore reject the contention that RCW 69.50.435 is unconstitutionally vague for the reason that it specifically allows for a penalty enhancement when the convicted dealer did not know he

was dealing drugs within 1,000 feet of a school bus route stop.

The Court of Appeals' other reason for regarding RCW 69.50.435 to be unconstitutionally vague seems largely to have arisen from the difficulties the court believed are associated with ascertaining the locations of school bus route stops. The court identified several factors which in its view show fair notice is lacking, such as that the stops are not marked or signed and are only used intermittently by schoolchildren. *State v. Coria*, 62 Wn. App. 44, 49-50, 813 P.2d 584 (1991).

█ It is true that the school bus route stops involved here, like most others, are not marked. Therefore, the defendants could not have immediately determined, simply by looking around during a drug sale, that they were nearby a school bus route stop. Nevertheless, information regarding the locations of the stops was available through such means as observing the gathering of schoolchildren waiting for their school buses, or contacting local schools or the director of transportation for the school district. It may be unrealistic, of course, to expect drug dealers to take these steps, but that is irrelevant to the question whether the statute is unconstitutionally vague. The defendants' failure to have been aware of the law and to have taken action to protect themselves against the enhanced penalty for their criminal conduct is no basis for declaring the statute unconstitutionally vague.

The other difficulties with locating school bus route stops the Court of Appeals identified also do not establish vagueness. It is true that some school bus route stops are changed according to the needs of the children. *Coria*, at 49. Since the defendants' vagueness challenge raises no First Amendment issues, however, the statute must be considered as applied to their individual cases. *See Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). There is no evidence in this case that the stops involved here were changed. Rather, the record indicates that they were all established, regularly

used stops unaffected by whatever routing changes were made regarding other stops.

Several of the difficulties in ascertaining the locations of the school bus route stops the Court of Appeals identified relate to the master map the school district submits to SPI. For example, the Court of Appeals noted that there is only one copy of the master map, and that it is not kept on file at SPI and is sometimes in transit and not available to anyone. *Coria*, at 49. These facts may indicate a difficulty in quickly gaining access to the master map. However, Mr. Baffaro testified that once SPI has calculated the reimbursement due the school district, the master map is sent back to his office. We presume this transit time is brief. The map therefore is reasonably accessible if for any reason it needs to be consulted. In any case, the defendants did not need to gain access to the master map in order to have determined the locations of the school bus route stops involved here because that information was readily available through other means.

The Court of Appeals indicated concern about the fact that the logbook in Mr. Baffaro's office contains the current stops and is not a record of the stops designated on the map submitted to SPI. *Coria*, at 49. This fact is significant only to the extent it indicates the possibility of discrepancies between the logbook in Mr. Baffaro's office and the map sent to SPI. There is no evidence of any discrepancy regarding the stops involved in this case. The record indicates only that there are discrepancies involving door-to-door stops. None of the stops involved here were door-to-door stops; they were all established, currently used stops indicated on the map sent to SPI.

Finally, the Court of Appeals was concerned with difficulties in interpreting the master map. *Coria*, at 49. Again, this is irrelevant because accessing the master map is not the only way of learning the locations of the school bus route stops. Moreover, whatever difficulties there are in interpreting the map are of no consequence because the defendants did not need to interpret the map themselves.

They could have telephoned the office where the map is kept where they would have reached someone familiar with its interpretation.

To conclude, the type of conduct RCW 69.50.435 proscribes is clear. The absence of a requirement that the drug dealer knew he was in proximity to a school bus route stop does not offend the due process requirement of fair notice. Nor is due process offended by the fact that the statute places on drug dealers the burden of determining by readily understandable and available means the proximity of their illegal activities to school bus route stops. We therefore reject the defendants' contention that RCW 69.50.435 is unconstitutionally vague.

## IV

The defendants next contend that RCW 69.50.435 offends constitutional principles of equal protection. We reject this argument.

Under the equal protection clause of the Washington State Constitution, article 1, section 12, and the fourteenth amendment to the United States Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Traditionally one of two tests has been used in analyzing an equal protection claim. *Schaaf*, at 17. Under the rational relationship test, the law being challenged must rest upon a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective. *Schaaf*, at 17. This test is used "whenever legislation does not infringe upon fundamental rights or create a suspect classification." *State v. Smith*, 93 Wn.2d 329, 336, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980). The other traditional test is strict scrutiny, under which the State's purpose must be compelling and the law must be necessary to accomplish that purpose. *Schaaf*, at 17. Strict scrutiny applies "if an allegedly discriminatory statutory classification affects a suspect class or a fundamental right." *Schaaf*, at 17. In addition to these two traditional

tests, both this court and the United States Supreme Court have recognized a third test that applies in limited circumstances. *E.g.*, *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 73 L. Ed. 2d 1090, 102 S. Ct. 3331 (1982) (applying intermediate scrutiny to state university's policy of admitting only women to nursing school); *State v. Phelan*, 100 Wn.2d 508, 671 P.2d 1212 (1983) (applying intermediate scrutiny to state's policy of not crediting time served during pretrial detention against prison sentence). Under this "intermediate scrutiny" test, "the challenged law must be seen as furthering a substantial interest of the state." *Schaaf*, at 17.

In the present case, the Court of Appeals held that intermediate scrutiny applies to the defendants' equal protection claim. *Coria*, at 50; *accord, State v. Lua*, 62 Wn. App. 34, 41, 813 P.2d 588 (1991). We disagree and hold that the rational basis test is the proper standard of review.

The circumstances in which intermediate scrutiny applies when physical liberty is implicated has been a matter of some confusion. In *State v. Rice*, 98 Wn.2d 384, 400, 655 P.2d 1145 (1982), this court held that physical liberty is a fundamental right requiring strict scrutiny. We later rejected that position in *State v. Phelan, supra*, where we considered whether time served during pretrial detention must be credited against the discretionary minimum term set by the Board of Prison Terms and Paroles. We held that equal protection requires credit to be given under such circumstances. In reaching this conclusion, we applied intermediate scrutiny which we regarded as required not just because physical liberty was implicated but because a semisuspect class, namely, the poor, was involved as well. *Phelan*, at 514. *Accord, In re Knapp*, 102 Wn.2d 466, 687 P.2d 1145 (1984) (extending *Phelan* to apply to time spent confined in a state mental hospital); *In re Mota*, 114 Wn.2d 465, 474, 788 P.2d 538 (1990) (applying intermediate scrutiny to conclude that equal protection requires good-time credit be granted for presentence incarceration).

In the present case, no semisuspect class is involved. The defendants nonetheless would have us extend *Phelan* and apply intermediate scrutiny on the sole basis that physical liberty is implicated. That we decline to do.

■ The federal courts which have addressed equal protection challenges to former 21 U.S.C. § 845a(a) have uniformly applied the rational basis test. For example, in *United States v. Crew*, 916 F.2d 980, 983 (5th Cir. 1990), the court stated:

> Since selling cocaine is surely not an activity that is considered fundamental and this particular claim does not involve a class of persons entitled to constitutional protection, § 845a need only be rationally related to a legitimate government interest to withstand this equal protection challenge.

*See also United States v. Pitts*, 908 F.2d 458, 459 (9th Cir. 1990); *United States v. Thornton*, 901 F.2d 738, 740 (9th Cir. 1990); *United States v. Jones*, 901 F.2d 738, 740 (9th Cir. 1990); *United States v. Holland*, 810 F.2d 1215, 1218-19 (D.C. Cir.), *cert. denied*, 481 U.S. 1057 (1987); *United States v. Campbell*, 935 F.2d 39, 45 (4th Cir.), *cert. denied*, 116 L. Ed. 2d 287 (1991); *United States v. Cross*, 900 F.2d 66, 68 (6th Cir. 1990). Similarly, state courts that have addressed equal protection challenges to state counterparts to RCW 69.50.435 have also applied the rational basis test. *E.g.*, *State v. Moore*, 782 P.2d 497, 503 (Utah 1989). We agree that this is the appropriate standard of review. Accordingly, we reject the position taken by the Court of Appeals in *Lua* and *Coria* that intermediate scrutiny applies where physical liberty alone is implicated. *See State v. Danis*, 64 Wn. App. 814, 818-19, 826 P.2d 1096 (requiring both implication of physical liberty and effect upon semisuspect class as prerequisites for application of intermediate scrutiny), *review denied*, 119 Wn.2d 1015 (1992).

■ Under the rational basis test, a legislative classification will be upheld "unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799

P.2d 235 (1990).[4] *Accord, e.g., Gregory v. Ashcroft,* ___ U.S. ___, 115 L. Ed. 2d 410, 430, 111 S. Ct. 2395 (1991); *State v. Schaaf,* 109 Wn.2d at 17. The burden is on the party challenging the classification to show that it is "purely arbitrary". *Omega Nat'l Ins. Co.,* 115 Wn.2d at 431.

Here, the state objective underlying RCW 69.50.435 is the legitimate goal of keeping drug dealers away from schoolchildren. The defendants' arguments are directed at showing the school bus route stop classification in RCW 69.50.435 is not rationally related to this objective. They argue that the statute is irrational because school bus route stops are not places where children are often present in large numbers, or even present at all except on specific days and times.

We reject this argument. The federal school yard statute has consistently been upheld against attack from the argument that it is irrational because it applies even when children are not present. *E.g., United States v. Cross, supra* at 68; *United States v. Holland, supra* at 1218-19. We believe a similar result is required here.

This is apparent in light of the statute's purpose, which we regard as twofold: to keep drug dealers away from children in general, and to keep them away from school bus route stops in particular when children are actually present. Relative to the first objective, it must be remembered that school bus stops are located in areas where children live. *See Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835, 601 P.2d 936 (1979) (when a statutory classification is challenged, facts are presumed sufficient to justify it), *appeal dismissed,* 446 U.S. 979 (1980). Therefore the penalty enhancement provision of RCW 69.50.435 may reasonably be viewed as discouraging the development of the violent and

[4]This court has sometimes used a 3-part test when applying the rational basis test to equal protection challenges. *E.g., Clark v. Pacificorp,* 118 Wn.2d 167, 822 P.2d 162 (1991); *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980). We believe the 1-part test more meaningfully captures the inquiry required here. *Cf. State v. Danis,* 64 Wn. App. at 821 (criticizing the 3-part test and arguing that the *Omega* formulation is preferable).

destructive drug culture in areas where there are children. Viewed in this way, whether children are frequently present at school bus stops is unimportant because it is the children in the areas who are being shielded from the harmful effects of drug crimes. The school bus route stops are simply readily specifiable places that may be used to define those areas. It may be that there is a better approach to the problem of keeping drug dealers away from children in general than by enhancing the penalty for drug dealing near school bus route stops. However, even if that were so — and the defendants have not shown that it is — it would not invalidate the statute. The rational basis test requires only that the statute's means is rationally related to its goal, not that the means is the best way of achieving that goal. *E.g., Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 316, 49 L. Ed. 2d 520, 96 S. Ct. 2562 (1976).

RCW 69.50.435 also has a rational basis relative to the narrower legislative purpose of keeping drug dealers away from school bus route stops when children are actually present. It is no doubt true that children are present at school bus route stops only at specific times. Nonetheless, if drug dealers were allowed to become established near the stops, then it would be impossible to keep them away from those locations only when children are actually present. To keep the dealers away from the stops at specific times, it may rationally be supposed that it is necessary to keep them away from the stops at all times. The statute's classificatory scheme may thus be viewed as an instrument, although perhaps a blunt one, furthering its end. The classification is not "purely arbitrary", as it would have to be if this court were properly to strike it down under the rational basis test. *See Omega Nat'l Ins. Co.*, 115 Wn.2d at 431.

In its analysis, the Court of Appeals stated that RCW 69.50.435 is "illogical" and "irrational" because "[f]or all practical purposes, the entire metropolitan area of . . . Yakima is blanketed by the enhanced penalty." *State v. Coria*, 62 Wn. App. 44, 52, 813 P.2d 584 (1991). We are not persuaded by this "blanketing" argument.

First, although the school district transportation director testified that most of the city of Yakima is within 1,000 feet of a school bus route stop, his testimony also indicates that the reason for this is that there are many door-to-door stops added at the beginning of the school year. Since stops added after the master map is sent to SPI are not added to that map, such stops will not qualify as school bus route stops for purposes of the penalty enhancement. RCW 69.50-.435(f)(3). Consequently it is not clear what proportion of metropolitan Yakima is blanketed by the enhanced penalty.

Second, even if all of metropolitan Yakima is blanketed with the penalty enhancement, it is not clear that this is "illogical" and "irrational", or that it is not rationally related to the State's interest in protecting children from the harmful effects of drugs. The statute may fairly be viewed as tending to prevent drug dealers from becoming established in areas where there are school bus stops, and therefore the statute furthers the State's goal of keeping drugs away from children. If some towns and cities are effectively blanketed by the statute's penalty enhancement, this is not obviously a defect in the statute. Blanketing the city may give the entire city the reputation among drug dealers as a dangerous place to ply their trade, and in that way may serve to protect the city's children. One might disagree with this on policy grounds, but such disagreement is not a proper basis for finding the statute irrational. One who challenges a statute under the rational basis test "must do more than merely question the wisdom and expediency of the statute." *Yakima Cy. Sheriff's Ass'n*, at 836.

Finally, amicus curiae Washington Defender Association (WDA), in support of the defendants' equal protection argument, argues there is a higher concentration of school zones and racial minorities in urban areas, and therefore RCW 69.50.435 has a disparate impact on minorities. WDA presents statistics showing that in 1991 a majority of cases in which the school zone enhancement was applied involved persons of Hispanic, African-American, or Asian descent. This argument fails to establish an equal protection viola-

tion. "It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim." *United States v. Crew*, 916 F.2d 980, 984 (5th Cir. 1990) (rejecting equal protection challenge to federal school yard statute based on theory of disproportionate impact on racial minorities); *see also United States v. Agilar*, 779 F.2d 123, 126 (2d Cir. 1985) (same), *cert. denied*, 475 U.S. 1068 (1986). There has been no showing here that RCW 69.50.435 is based on any discriminatory intent.

In sum, RCW 69.50.435 may fairly be viewed as rationally related to the State's legitimate purpose of keeping drug dealers away from schoolchildren. The statute therefore passes the rational basis test and withstands the defendants' equal protection challenge.

## V

We conclude that RCW 69.50.435 is not unconstitutionally vague and does not violate the defendants' rights to equal protection of the laws. We reverse the Court of Appeals and affirm the defendants' enhanced sentences.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., concur.

DURHAM, J. (dissenting) — Due process requires that statutes "provide fair notice, measured by common practice and understanding, of that conduct which is prohibited". *State v. Brayman*, 110 Wn.2d 183, 196, 751 P.2d 294 (1988) (quoting *State v. Carter*, 89 Wn.2d 236, 239-40, 570 P.2d 1218 (1977)). Nonetheless, RCW 69.50.435 substantially increases criminal penalties for selling drugs in particular "zones"[5] which are not visible or otherwise identifiable. Accordingly, I would agree with the Court of Appeals that the statute is uncon-

---

[5]The statute enhances penalties for drug offenses committed within 1,000 feet of school bus route stops or school grounds. RCW 69.50.435(a). The validity of an enhanced penalty for offenses committed near school grounds is not at issue in these appeals.

stitutionally vague and would reverse the enhanced sentences.

To briefly restate the facts, most school bus stops in the Yakima School District are a "now you see it, now you don't" occurrence. They are not marked in any visible manner and are discernible only by the presence of the school bus while it is loading or unloading. The locations change from time to time depending on the needs of the students, the weather, and other factors. A list indicating the locations of stops is published in the local newspaper every fall, but it is not considered official for purposes of the enhanced penalty statute. Testimony from the Yakima School District's director of transportation revealed that only one official bus stop map exists, of which no copies are made. This map is extremely difficult to read and it is not updated during the school year even though changes are commonplace. The map is sometimes in transit to the Superintendent of Public Instruction.

The majority contends that fair notice does not require knowledge that one is dealing drugs within 1,000 feet of a school bus route stop. It relies upon federal and state cases which uphold enhanced penalties for selling drugs near school yards, playgrounds, youth centers and swimming pools. Majority, at 165. As the majority points out, these cases hold that mens rea, or knowledge that one is in close proximity to a school, need not be shown in order to enhance a sentence. However, these cases all deal with activity surrounding a visible structure, not an unmarked location. In this regard, the Washington statute is unique. No other jurisdiction enhances punishments for selling drugs near a location that is not visible. *None* of the cases cited by the majority address the particular problem posed by the Washington statute.

The majority also relies on the fact that the statute in question, RCW 69.50.435, has no mens rea requirement. However, this does not go to the issue of fair notice under the due process clause of the constitution. When enhanced penalties are tied to marked locations like schools and playgrounds, individuals have the *ability* to determine if they

face increased criminal liability. *See United States v. Falu*, 776 F.2d 46, 50 (2d Cir. 1985). No such opportunity exists under our statute. The majority's suggestion that a drug dealer can simply call school authorities and ask for the location of stops is silly. As the Court of Appeals pointed out, "[i]f the arresting officer cannot ascertain the distance at the time of arrest, it is unreasonable to expect a particular defendant to have knowledge at the time of the sale." *State v. Coria*, 62 Wn. App. 44, 50, 813 P.2d 584 (1991).

Although the majority was unable to cite any authority addressing the specific problem posed by RCW 69.50.435, there is at least one federal case on point. In *United States v. Coates*, 739 F. Supp. 146 (S.D.N.Y. 1990), defendants were accused of possessing cocaine with intent to distribute within 1,000 feet of a school. At the time of the arrest, the defendants were on a train bound for Maryland and the school was within 1,000 feet of the train station. In holding the schoolhouse statute to be inapplicable, the District Court stated that:

> To charge a schoolyard count in these circumstances stretches the scope of the statute beyond logical and acceptable bounds. The statute cannot be meant to reach the circumstance of Coates' and Dillard's presence, *undoubtedly unknowingly*, within a 1,000 feet of a school while ensconced in a railway car. To posit liability under [21 U.S.C.] § 845a in these fortuitous circumstances is simple overreaching.

(Italics mine.) *Coates*, 739 F. Supp. at 153.

Similarly, the due process requirement of fair notice does not allow the State to enhance penalties for selling drugs near unmarked and largely unidentifiable locations like school bus stops. Enhancing drug penalties is within the Legislature's prerogative, but it must do so in a manner that comports with due process.

SMITH and JOHNSON, JJ., concur with DURHAM, J.