[Nos. 28559-2-II; 28562-2-II.   Division Two.   October 14, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT MICHAEL LIDEN, *Appellant*.

*Manek R. Mistry* (of *Backlund & Mistry*), for appellant.
*Jeremy R. Randolph, Prosecuting Attorney,* and *Brandy M. Meyer* and *J. Andrew Toynbee, Deputies,* for respondent.

HOUGHTON, J.— Scott Liden appeals his convictions of bail jumping and failure to register as a kidnapping offender,[1]

---

[1] The State charged Liden with failure to register as a kidnapping offender on July 7, 1999. The State further charged Liden with three counts of failure to register as a kidnapping offender, through an amended information filed on February 2, 2002. A second amended information, filed on the same date, charged

arguing that he was not subject to the kidnapping registration statute, the bail jumping information was defective, and insufficient evidence supported his conviction of bail jumping. We agree that Liden was not subject to the registration statute and that insufficient evidence supported his bail jumping conviction; therefore, we reverse both convictions.

## FACTS

On May 10, 1996, Liden pleaded guilty to two unlawful imprisonment counts.[2] No law then required him to register as a kidnapping offender. In 1997, the legislature amended RCW 9A.44.130 to require kidnapping offender registration.[3] LAWS OF 1997, ch. 113, § 3. RCW 9A.44.130(4)-(a)(ii) also requires registration by formerly convicted offenders still under active Department of Corrections (DOC) supervision on July 27, 1997.[4]

The State charged Liden with failure to register as a kidnapping offender. On May 24, 2001, he signed for and received a notice setting his trial for the "[w]eek of August 6, 2001." Clerk's Papers (CP) at Ex. 10. On August 9, 2001, the court called his trial, but he did not appear. In response, the State amended the information to additionally charge him with one count of bail jumping.

---

Liden with one count of failing to register as a kidnapping offender and one count of bail jumping.

[2] The trial court sentenced Liden to 8 months concurrent confinement on each conviction, followed by 12 months community supervision. The trial court gave him credit for time served between September 27, 1995, and May 10, 1996.

[3] A "kidnapping offense" includes the crime of unlawful imprisonment "where the victim is a minor and the offender is not the minor's parent." RCW 9A.44.130(9)(b). RCW 9A.44.130 governs the registration requirements for sex and kidnapping offenders and states in part: "(1) Any adult . . . who has been found to have committed or has been convicted of any . . . kidnapping offense . . . shall register with the county sheriff for the county of the person's residence . . . ."

[4] RCW 9A.44.130(4)(a)(ii) more specifically provides: "Kidnapping offenders who, on July 27, 1997, are not in custody but are under the jurisdiction of the . . . department of correction's active supervision, as defined by the department of corrections . . . on, or after July 27, 1997, must register within ten days of July 27, 1997."

Liden moved to dismiss the failure to register charges, arguing that because he was merely on monetary and not active supervision, RCW 9A.44.130 did not apply. The trial court denied the motion.

At his trial, the State called Community Corrections Officer (CCO) James Moore and asked him to define "active supervision." Report of Proceedings (RP) (Feb. 13, 2002) at 31-32. He testified that DOC's active supervision includes monetary supervision.[5]

During cross-examination, Moore admitted that Liden's DOC supervision record stated that Liden's active supervision ended on May 10, 1997. On redirect examination, Moore testified that active supervision "is from the time the individual is placed with the [DOC] for supervision until such time that he has fully paid any financial/legal obligations." RP (Feb. 13, 2002) at 40. On recross-examination, Moore explained that although he had seen a DOC directive defining active supervision, he could neither produce a copy of it nor state its effective date.

With regard to the bail jumping charge, the State called Lewis County Superior Court Deputy Clerk Kim Alexander. She testified that on August 9, 2001, Liden did not appear for trial. She stated that August 9, 2001, was a Thursday, and the presiding judge routinely schedules Thursday criminal trials. The trial court relied on the notice of the trial setting date and the clerk's testimony to find that if

---

[5] Moore stated,

[a]ctive supervision refers to the time frame which an individual has been sentenced by the Court under Judgment and Sentence to be supervised by the [DOC and] is supervised by the [DOC].

. . . .

Should a person be ordered to pay legal/financial obligations, the Court orders those financial obligations, the time frame being up to ten years. The [DOC] is, therefore, ordered to supervise that collection of legal/financial obligations up to that ten-year period. If a person completes paying the legal/financial obligations previous to that ten-year period, then the case is closed thoroughly with an order of discharge from supervision if he's met all of that criteria.

RP (Feb. 13, 2002) at 32-33.

Liden had appeared on any of the days before August 9, 2001, it would not have issued a bench warrant.

The court found Liden guilty of failure to register as a kidnapping offender and bail jumping. Liden appeals.

## ANALYSIS

### Failure to Register

Liden contends that RCW 9A.44.130 does not apply to him because he was not subject to DOC's active supervision when the legislature amended the registration statute.[6] And he asserts that DOC's failure to promulgate a regulatory definition of "active supervision" denied him his due process rights. Appellant's Reply Br. at 5-6.

■ Due process requires that a penal statute be sufficiently specific so that persons of common understanding will be on notice of the activity the statute prohibits. *State v. Jenkins*, 100 Wn. App. 85, 89, 995 P.2d 1268, *review denied*, 141 Wn.2d 1011 (2000). "The requirement of sufficient definiteness 'protects individuals from being held criminally accountable for conduct which a person of ordinary intelligence could not reasonably understand to be prohibited.' " *Jenkins*, 100 Wn. App. at 90 (quoting *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)).

■ We interpret statutes de novo to ascertain and give effect to the legislature's intent. *In re Det. of A.S.*, 138 Wn.2d 898, 911, 982 P.2d 1156 (1999); *State v. Lee*, 96 Wn. App. 336, 341, 979 P.2d 458 (1999). Where the statute is plain and unambiguous, we derive its meaning and the legislature's intent from its language. *In re Parentage of J.H.*, 112 Wn. App. 486, 498, 49 P.3d 154 (2002), *review denied*, 148 Wn.2d 1024 (2003).

---

[6] Liden also contends that he was not required to register as a kidnapping offender because the information and the judgment and sentence on his unlawful imprisonment convictions did not indicate that the victims were minors and that he was not their parent, as RCW 9A.44.130(9)(b) required, and insufficient evidence supported his identification as a kidnapping offender. Because we reverse on another ground, we do not address these issues.

■ According to RCW 9A.44.130(4)(a)(ii), DOC's "active supervision" definition controls. But as Liden notes, DOC provides no written definition of "active supervision." The State produced only CCO Moore's definition. But Moore's definition directly conflicted with DOC records noting that Liden's active supervision ended on May 10, 1997, while Liden was still on monetary supervision. This statute alone, and absent a clear DOC definition, does not give proper notice to possible offenders of the proscribed conduct. The lack of any statutory or regulatory definition of the phrase "active supervision" leaves Liden in a position where he does not have fair warning as to whether the statute applies to him, requiring reversal of his failure to register conviction.[7]

## Bail Jumping

Liden further contends that his bail jumping conviction must be reversed on several grounds. First, he asserts that the trial setting notice inadequately advised him of when to appear for trial. Second, he asserts that insufficient evidence supported the conviction because the State failed to establish that he did not appear during the prescribed time period. Finally, he asserts that the bail jumping information was factually and legally deficient.

As we already noted, the due process vagueness doctrine serves to (1) provide citizens with fair warning of what conduct must be avoided and (2) protect them from arbitrary enforcement of the law. *State v. Halstien*, 122 Wn.2d 109, 116-17, 857 P.2d 270 (1993). Here, the trial setting notice stated:

TRIAL: Week of August 6, 2001

**Note: All trials begin at 9:30 a.m. unless a different time is specified**

---

[7] The rule of lenity, favoring the accused, "assures adequate notice, and thus due process, concerning what conduct will be considered illegal." *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 98, 66 P.3d 606 (citing *Liparota v. United States*, 471 U.S. 419, 427, 105 S. Ct. 2084, 85 L. Ed. 2d 434 (1985)), *cert. denied*, ___ U.S. ___, 124 S. Ct. 223 (2003).

CP at Ex. 10. The notice also stated that "THE DEFENDANT SHALL APPEAR FOR ALL OF THE ABOVE SCHEDULED COURT HEARINGS. Failure to appear by the defendant is a crime and may result in a bench warrant being issued authorizing the arrest of the defendant." CP at Ex. 10.

Taking the evidence and all reasonable inferences in the State's favor, we fail to see how the State proved that Liden knew the exact date on when to appear for his trial. Although the court may routinely call criminal trials on Thursdays, as the deputy clerk testified, no one gave Liden such notice. The notice of trial setting date was insufficient as a predicate for a bail jumping charge and his conviction for bail jumping is reversed.

Reversed.

HUNT, C.J., and SEINFELD, J., concur.