[No. 32125-4-II. Division Two. December 13, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL GILBERT STRATTON, *Appellant*.

*John A. Hays*, for appellant.

*Susan I. Baur, Prosecuting Attorney*, and *Michelle L. Shaffer, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Michael Gilbert Stratton appeals his conviction for failure to register as a sex offender under RCW 9A.44.130. Stratton argues he did not have to re-register under the statute because his previously registered address was still his fixed residence; he had moved out of the house at the address, but he still received his mail there, received phone service there, and spent nights there in his car. Interpreting the statutory ambiguity in Stratton's favor, we hold that the State failed to prove that Stratton lacked a "fixed residence" or that he changed his address. Accordingly, we reverse and dismiss.

## FACTS

¶2 In October 2000, Michael Gilbert Stratton was convicted of luring with sexual motivation. Based on that conviction, he was required to register as a sex offender under RCW 9A.44.130.

¶3 After his conviction, Stratton entered into a real estate contract to purchase the house and property at 121 Beacon Hill Drive in Longview. When he moved onto the property in mid-2002, he reported his new address to the Cowlitz County Sheriff's Office as the registration statute required.

¶4 In Spring 2003, Stratton defaulted on the purchase. Unable to cure the default, he voluntarily moved out of the house and returned the keys on September 12, 2003. He testified that when he returned the keys to the real estate agency, he asked if he could be allowed to leave some items on the property for a while, use the telephone box, and be there "for a little bit." Report of Proceedings at 64. Accord-

ingly, he continued his telephone service and his postal service.

¶5 After returning the keys to the house, Stratton began living out of his vehicle, which he regularly parked in the driveway behind the 121 Beacon Hill Drive house at night. He testified that he remained at the property because he had to use the telephone box there to receive phone messages related to his construction supply business. He conducted most of his business by telephone, and he had an internet long distance service that worked only if he plugged into the telephone box at the Beacon Hill Drive location. Stratton testified that he plugged in his phone to the telephone box every day to get his phone messages. He drove his car on and off the property during the day. He did not notify the sheriff about his situation because he had not moved off the property and still considered it his residence.

¶6 In February 2004, Cowlitz County Sheriff's Deputies Chuck Dubke and Jerry Baker went to 121 Beacon Hill Drive to verify that Stratton still lived there. When the officers arrived, they noticed a "for sale" sign in front of the house, and they saw no furniture or belongings inside. They knocked twice, received no answer, and left. In March 2004, the State charged Stratton with failure to register as a sex offender, alleging in part:

> The defendant . . . did knowingly fail to send his change of address to the Cowlitz County Sheriff . . . after ceasing to have a fixed residence . . . and/or lacking a fixed residence did knowingly fail to report weekly to the Cowlitz County Sheriff; contrary to RCW 9A.44.130(1), (4)(a), (5)(a), (6)(a) and (6)(b).

Clerk's Papers (CP) at 1.

¶7 Several neighbors confirmed Stratton's testimony about his presence and activities at the residence. The trial court found that Stratton spent most nights in his car in the driveway, used the phone line outside the house to connect to the internet, and often left his car in the area.

¶8 Stratton waived his right to a jury trial, and the trial court convicted him, concluding that he was a "transient, living in his car outside his previous residence." CP at 7.

ANALYSIS

Due Process

¶9 Stratton argues that under the undisputed facts and the trial court's findings, the State failed to prove that he was required to register because he lacked a fixed address.

¶10 If a convicted sex offender changes his residence address within the same county, he must give the county sheriff written notice of the change within 72 hours. RCW 9A.44.130(5)(a). In addition, a convicted sex offender who lacks a "fixed residence" is required to provide written notice to the sheriff of the county where he last registered within 48 hours. RCW 9A.44.130(6)(a). In addition, he must report weekly, in person, to the sheriff of the county where he is registered. RCW 9A.44.130(6)(b).

¶11 We interpret statutes de novo. *State v. Liden*, 118 Wn. App. 734, 738, 77 P.3d 668 (2003). Our goal is to "ascertain and give effect to the intent and purpose of the legislature in creating the statute." *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004) (citing *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)). We look for a statute's meaning from its wording, the context in which we find the statute, and the entire statutory scheme. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (citing *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003)); *see State v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10-12, 43 P.3d 4 (2002). If a statute provides no definition for a term, we look to the standard dictionary definitions. *Am. Cont'l*, 151 Wn.2d at 518 (citing *Watson*, 146 Wn.2d at 954).

¶12 A statute is ambiguous if we can interpret it in more than one reasonable way. *Jacobs*, 154 Wn.2d at 600-01 (citing *Wash. Pub. Ports*, 148 Wn.2d at 645). And if

a criminal statute is ambiguous, the rule of lenity requires that we interpret it in favor of the defendant absent legislative intent to the contrary. *Jacobs*, 154 Wn.2d at 601 (citing *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 249, 955 P.2d 798 (1998)); *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991).

■ ■ ¶13 Chapter 9A.44 RCW does not define the phrase "fixed residence." Accordingly, we look to a standard dictionary, which includes the following definitions for "residence":

> the act . . . of abiding or dwelling in a *place* for some time : an act of making one's home in a *place* . . . : the *place* where one actually lives or has his home distinguished from his technical domicile . . . : a temporary or permanent dwelling *place*, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit . . . : a *building* used as a home.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (1969) (emphasis added). "Fixed" can mean "securely placed or fastened," "permanently and definitely located," or "not subject to change or fluctuation," among other definitions. WEBSTER'S, *supra*, at 861.

¶14 "Residence" is ambiguous as applied here. It could simply indicate a *place* where one actually lives, not necessarily limited to a building, or it could be limited to a *building* used as a home. Accordingly, the rule of lenity requires that we interpret the statute in Stratton's favor absent legislative intent to the contrary. The purpose of the sex offender registration statute is to assist law enforcement agencies' efforts to protect their communities against sex offenders who reoffend. *State v. Pray*, 96 Wn. App. 25, 28, 980 P.2d 240 (1999) (citing LAWS OF 1990, ch. 3, § 401). Specifically, registration provides law enforcement agencies with an address where they can *contact* a sex offender. *Pray*, 96 Wn. App. at 28-29 (emphasis added). The sheriff could have contacted Stratton at the 121 Beacon Hill Drive address by mail, by phone, or in person in the evenings.

¶15 The legislature added the phrase "fixed residence" to the registration statute in 1999 in response to *State v. Pickett*, 95 Wn. App. 475, 975 P.2d 584 (1999). LAWS OF 1999, 1st Sp. Sess., ch. 6, § 1. In *Pickett*, the defendant was fired from his job, and his possessions had been removed from the home of his former employer, the address he had registered as his address, which was required for his being a sex offender. *Pickett*, 95 Wn. App. at 476. He spent a day or two with friends and then began living on the streets and in public parks. *Pickett*, 95 Wn. App. at 476. The court held that there was insufficient evidence to support Pickett's conviction for failure to register. *Pickett*, 95 Wn. App. at 476. The court recognized that Pickett did not know where he would sleep each night and, thus, he could not give the sheriff an address where he could be contacted; further, the registration statute did not provide a way for transients to register. *Pickett*, 95 Wn. App. at 479-80; *see also* FINAL LEGISLATIVE REPORT, ESHB 1004, 56th Leg., 1st Spec. Sess., at 2 (Wash. 1999). Accordingly, the legislature amended the registration procedure and the language of the statute so that "all sex and kidnapping offenders whose history requires them to register shall do so regardless of whether the person has a fixed residence." LAWS OF 1999, 1st Spec. Sess., ch. 6, § 1 (effective date June 7, 1999).

¶16 Unlike Pickett, Stratton was not moving from park to park and street to street each night. Instead, Stratton continued to sleep at the 121 Beacon Hill Drive address; he also got his mail there and continued to receive telephone service by an internet connection accessible only from there. He intended to return to the 121 Beacon Hill address daily and had no definite departure date. Stratton argues that for these reasons, 121 Beacon Hill Drive was still his fixed residence. We agree. Stratton's living situation fits the definition of residence as a "place" where he was abiding or dwelling, and it was "fixed" in that it was not subject to change or fluctuation. Accordingly, the State

failed to prove that the statute required him to register as a sex offender who had no fixed residence.

¶17 Reversed and dismissed.

VAN DEREN, A.C.J., and HOUGHTON, J., concur.