[No. 62962-0-I.   Division One.   January 19, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE A. BENNETT, JR., *Appellant*.

*Clarence A. Bennett Jr.*, pro se.

*Jennifer M. Winkler* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 GROSSE, J. — Residential status is not an element of the crime of failure to register as a sex offender. Here, the trial court properly instructed the jury that to convict, it must find that the defendant knowingly failed to comply with the sex offender registration requirements. Accordingly, we affirm.

FACTS

¶2 In 1991, Clarence Bennett Jr. (Bennett) was convicted of a sex offense and was notified that he was required to register with the sheriff as a sex offender. In December 2006, he registered his address as that of his father, Clarence Bennett Sr. (Clarence Sr.). In December 2007, he was still living with his father at this address.

¶3 On January 2, 2008, Detective Douglas Garrett sent a certified letter to Bennett at his father's address to verify Bennett's current address. The letter included a form that Bennett was required to complete and return to confirm his current address. His father signed the return receipt on January 11, 2008.

¶4 When Garrett did not receive the confirmation form back from Bennett, he sent out an officer to conduct a sex offender verification check. On February 5, 2008, Officer Eric Hemmen went to Clarence Sr.'s apartment and spoke with Clarence Sr. When Hemmen learned that Bennett was not living there, he told Clarence Sr. that he needed to have his son register as being homeless.

¶5 On February 7, 2008, Bennett called Garrett at the telephone number that was listed in the certified letter and left a message with a call-back number. Garrett called him back, and Bennett told him that he was "kind of living here and there, working at the Union Hall, trying to get up enough money so he could get a place of his own." He also told Garrett that he had not been at his parents' place "for a couple of months." Garrett then told him that if he did not have a permanent address, he needed to register as homeless. Bennett said he would do so the following Monday.

¶6 Garrett did not speak to him again but went to Clarence Sr.'s house on April 25, 2008. No one was home at the time, so Garrett checked King County records to determine whether Bennett had changed his address. According to the King County records, the last address Bennett

registered was his father's apartment. There was no record of him registering as homeless.

¶7 The State charged Bennett with failing to register as a sex offender between January 1, 2008 and April 30, 2008. Clarence Sr. testified that Bennett lived with him in December 2007 but moved out after they had a disagreement. Clarence Sr. said that he thought Bennett might have been staying at his sister's home in Tukwila after he moved out, but that he was also "just out in the streets" or "with a girlfriend or something like that." He also testified that when he would check in with the sister she did not know where Bennett was. Clarence Sr. further testified that when he received the letter for Bennett, he took it to the sister's home and told Bennett that he left a letter there for him. He said he also told Bennett that he needed to be sure he contacted the officer who came to the house asking about him.

¶8 Bennett also testified, claiming that he never moved from his father's residence. He testified that he was house-sitting for his sister during that time because she was in the hospital, but that he still kept his mailing address at his father's apartment and left some of his belongings there. He admitted that he continued to stay at his sister's even after she came home from the hospital because he and his dad were not "seeing eye to eye," but testified that he was "back and forth" between his sister's house and his dad's house during this time. He also testified that he never saw the letter sent by Garrett and that his father never gave it to him. He said that he only "vaguely remember[ed]" talking with an officer who called him at his sister's house but denied telling the officer that he was homeless and that he would come down and register as homeless.

¶9 The trial court instructed the jury that to convict, it had to find the following elements proved beyond a reasonable doubt:

(1) That during a time intervening between January 1, 2008 and April 30, 2008 the defendant was required to register as a sex offender;

(2) That during a time intervening between January 1, 2008 and April 30, 2008 the defendant knowingly failed to comply with the requirements of sex offender registration; and

(3) That these acts occurred in the State of Washington.

The court further instructed:

A person commits the crime of failure to register as a sex offender when that person, having been convicted of a sex offense for which he is required to register as a sex offender with the county sheriff's office, [(1)] knowingly fails to send signed written notice of a change of address to the county sheriff within seventy-two hours of moving to a new residence within the same county or [(2)] knowingly fails to comply with the requirement that the defendant who had a fixed residence, send a signed written notice of where the defendant plans to stay to the sheriff of the county where the defendant last registered within forty-eight hours, excluding weekends and holidays, of ceasing to have a fixed residence.

The jury found Bennett guilty as charged.

## ANALYSIS

### I. *Sufficiency of "To Convict" Instruction*

¶10 Bennett first contends that the trial court's "to convict" instruction failed to include the essential elements of the charge, and that the court's instructions failed to inform the jury that each element had to be proved beyond a reasonable doubt. He argues that the essential elements of the crime include the alternative means set forth under RCW 9A.44.130(5)(a) and (6)(a) and should have been included in the to convict instruction. He notes that these were set forth in another instruction but contends that this was a "confusing definitional instruction" and did not instruct the jury that the alternative means must be proved beyond a reasonable doubt.

¶11 RCW 9A.44.130 governs registration for sex offenders and provides the penalties for failure to comply. RCW 9A.44.130(5)(a) provides, "If any person required to register

pursuant to this section changes his or her residence address within the same county, the person must send signed written notice of the change of address to the county sheriff within seventy-two hours of moving." RCW 9A.44-.130(6)(a) provides, "Any person required to register under this section who lacks a fixed residence shall provide signed written notice to the sheriff of the county where he or she last registered within forty-eight hours excluding weekends and holidays after ceasing to have a fixed residence." RCW 9A.44.130(11)(a) provides, "A person who knowingly fails to comply with any of the requirements of this section is guilty of a class C felony if the crime for which the individual was convicted was a felony sex offense . . . ."

¶12 In *State v. Peterson*, we held that subsections (5)(a) and (6)(a) of the statute do not create alternative means of committing the crime of failure to register as a sex offender.[1] As we recognized, "The statute imposes one duty: to register with the sheriff."[2] We noted that the definition of registration and procedure for registration are set forth in the remaining subsections of the statute and that "[t]hese subsections merely articulate the definition of continuing compliance. They do not define the elements or create alternative means of committing the crime of failure to register as a sex offender."[3] Thus, we concluded, "[T]here is only one means of committing [the] crime—knowingly failing to register as required by RCW 9A.44.130(1)(a)."[4] The trial court's "to convict" instruction here complies with *Peterson*'s holding and properly instructed the jury on the essential elements of the charge.

¶13 Bennett acknowledges *Peterson* but asks us to reconsider it, contending that earlier decisions of this court construed the statute to include residential status as an

---

[1] 145 Wn. App. 672, 186 P.3d 1179 (2008), *review granted*, 165 Wn.2d 1027, 203 P.3d 379 (2009).

[2] *Peterson*, 145 Wn. App. at 677.

[3] *Peterson*, 145 Wn. App. at 678.

[4] *Peterson*, 145 Wn. App. at 678.

element of the crime and citing *State v. Stratton*[5] and *State v. Pickett.*[6] But these cases did not define the crime to add elements or create alternative means of committing the crime, as Bennett's argument suggests. Rather, they simply held that there was insufficient evidence of failure to comply with the registration statute as a matter of law when the undisputed facts established that there was no basis for the alleged noncompliance.

¶14 In *Stratton*, the defendant did not report a change in residence after he defaulted on the purchase of his house and lived in his car parked in the driveway of the house. The trial court concluded he was a transient and found him guilty of failing to register as a sex offender.[7] On appeal, the court reversed, holding that because the defendant's living situation fit the definition of a fixed residence, he did not fail to comply by remaining registered at the address of the house.[8] In *Pickett*, the court held there was insufficient evidence to support a conviction for failure to register as a sex offender because the defendant, a transient, did not have an address to register and the registration statute in effect at the time did not provide a way for transients to register.[9]

## II. *DNA Collection Fee*

¶15 Bennett next argues that the trial court erred by imposing the DNA (deoxyribonucleic acid) collection fee because it was not a mandatory fee at the time he committed the offense. He argues that applying the mandatory fee provision in effect at the time of sentencing[10] violates the

---

[5] 130 Wn. App. 760, 124 P.3d 660 (2005).

[6] 95 Wn. App. 475, 975 P.2d 584 (1999).

[7] *Stratton*, 130 Wn. App. at 763-64.

[8] *Stratton*, 130 Wn. App. at 766.

[9] 95 Wn. App. at 480.

[10] RCW 43.43.7541 (effective June 12, 2008).

savings statute[11] and the ex post facto clause.[12] We disagree.

■ ¶16 In *State v. Brewster*, we recently rejected the argument that the savings statute applies to the mandatory DNA fee provision, concluding that the DNA collection fee is not punitive.[13] We likewise reject Bennett's ex post facto argument because the ex post facto prohibition applies only to laws inflicting criminal punishment.[14] Because the DNA collection fee is not punitive, Bennett fails to show that the mandatory DNA fee provision "alter[s] the standard of punishment which existed under [the] prior law," and thereby violates the ex post facto clause.[15] Thus, the provision in effect at the time of sentencing controls and the trial court properly included the mandatory DNA fee in Bennett's sentence.[16]

## III. *HIV Testing Requirement*

■ ¶17 Finally, Bennett challenges the trial court's imposition of the HIV (human immunodeficiency virus) testing requirement. The State concedes that the trial court erred by ordering Bennett to submit to HIV testing because it lacked statutory authority to do so. We therefore remand for the trial court to strike that provision of the sentence.

¶18 We affirm the conviction and remand for the trial court to strike the HIV testing requirement.

BECKER and LAU, JJ., concur.

Review denied at 168 Wn.2d 1042 (2010).

---

[11] RCW 10.01.040.

[12] U.S. CONST. art. I, § 10, cl. 1; WASH. CONST. art. I, § 23.

[13] 152 Wn. App. 856, 857, 218 P.3d 249 (2009).

[14] *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994).

[15] *Ward*, 123 Wn.2d at 499 (emphasis omitted).

[16] Because the trial court properly imposed the fee, there is no basis for Bennett's claim that counsel was ineffective for failing to object to the fee.