# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71262-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| E.Z.L.-D., | ) | |
| DOB: 01/10/97 | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: November 17, 2014 |

SPEARMAN, C.J. — E.Z.L.-D., a juvenile offender, challenges his conviction for failure to register as a sex offender pursuant to RCW 9A.44.130, alleging that the charging information was constitutionally deficient because it lacked a statement regarding the applicable registration deadline. In a statement of additional grounds filed pursuant to RAP 10.10, he also contends his conviction should be reversed because his violation of the registration statute was unknowing and compliance with the statute was impossible. We affirm.

## FACTS

Following a March 30, 2011, conviction for one count of rape of a child in the first degree, E.Z.L.-D. was incarcerated at Denney Juvenile Justice Center (DJJC) and required to register as a sex offender pursuant to RCW 9A.44.130. On April 17, 2012, while E.Z.L.-D. was in custody at DJJC, he signed and received a copy of a form notification of registration requirements for sex and

kidnapping offenders. He was orally advised of the contents of this form. That same day he registered with the Snohomish County Sheriff's Office, listing "the Tamarack House," a juvenile residential placement facility, as his place of residence. Clerk's Papers (CP) at 4.

On June 6, 2013, E.Z.L.-D. was released into the custody of the Department of Social and Health Services (DSHS). DSHS initially placed him at the Tamarack House. However, the next day he was moved to a different facility, the Cedar House, where he remained until June 20, 2013. After that, DSHS placed E.Z.L.-D. at his grandmother's residence.

After his initial registration on April 17, 2012, E.Z.L.-D. never registered a change of address either in person or by mail, as required under RCW 9A.44.130. On June 21, 2013, during a telephone conversation with his probation officer, E.Z.L.-D. stated that he "'didn't think [he] should have to'" re-register after each change of address. CP at 5. In a subsequent conversation with his probation officer on July 2, 2013, E.Z.L.-D. admitted that he still "'hadn't gotten around to'" registering. CP at 5.

On July 30, 2013, the State charged E.L.-D. with one count of failure to register as a sex offender in violation of RCW 9A.44.130. On October 22, 2014, the matter proceeded to bench trial. The trial court found E.L.-D. guilty as charged. He appeals.

No. 71262-4-I/3

## DISCUSSION

E.Z.L.-D. was charged with failure to register under RCW 9A.44.130(1)(a)[1] as follows:

> FAILURE TO REGISTER, committed as follows: That the respondent, having been convicted on or about the 30th day of March, 2011, of a sex offense, to wit: Rape of a Child in the First Degree, being required to register pursuant to RCW 9A.44.130, and having registered as residing at a fixed residence, did, on or about the 2nd day of July, 2013, cease to reside at that residence and did knowingly fail to provide timely written notice to the county sheriff's office; proscribed by RCW 9A.44.132, a felony.

CP at 43. He asserts for the first time on appeal that the information was constitutionally deficient because, although it alleged he failed to provide timely notice of his change in address, it did not specify the 72-hour statutory registration deadline. He contends that registering within 72 hours is an essential element of the crime of failure to register, which must be included in the charging document in order for it to withstand constitutional scrutiny. We disagree.

---

[1] RCW 9A.44.130(1)(a) provides:

Any adult or juvenile residing whether or not the person has a fixed residence, or who is a student, is employed, or carries on a vocation in this state who has been found to have committed or has been convicted of any sex offense or kidnapping offense, or who has been found not guilty by reason of insanity under chapter 10.77 RCW of committing any sex offense or kidnapping offense, shall register with the county sheriff for the county of the person's residence, or if the person is not a resident of Washington, the county of the person's school, or place of employment or vocation, or as otherwise specified in this section. When a person required to register under this section is in custody of the state department of corrections, the state department of social and health services, a local division of youth services, or a local jail or juvenile detention facility as a result of a sex offense or kidnapping offense, the person shall also register at the time of release from custody with an official designated by the agency that has jurisdiction over the person.

3

"[A] charging document is constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document so as to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). An insufficient charging document requires reversal and dismissal of charges without prejudice. Id.

In State v. Peterson, 145 Wn. App. 672, 677-78, 186 P.3d 1179 (2008), we considered whether residential status and registration deadlines were essential elements of the crime of failure to register under with former RCW 9A.44.130 (2003).[2] See, LAWS OF 2003, Ch. 215, § 1. Subsections (5)(a) and (6)(a) of the statute[3] provided for registration requirements and reporting

---

[2] We note that on review, the Supreme Court concluded that residential status was not an essential element of the crime of failure to register because "it is possible to prove that a registrant failed to register within any applicable deadline without having to specify the registrant's particular residential status." State v. Peterson, 168 Wn.2d 763, 772, 230 P.3d 588 (2010). The Court also noted that "[c]ommon sense suggests the statutory deadline is part of the State's burden of proof." Id. at 771, n.7. But the Court determined that the issue of whether a registration deadline was also an essential element of the crime of failure to register was not before it and specifically declined to decide that question. Id.

[3] Former RCW 9A.44.130(5)(a) and (6)(a) provided as follows:

(5)(a) If any person required to register pursuant to this section changes his or her residence address within the same county, the person must send written notice of the change of address to the county sheriff within seventy-two hours of moving. If any person required to register pursuant to this section moves to a new county, the person must send written notice of the change of address at least fourteen days before moving to the county sheriff in the new county of residence and must register with that county sheriff within twenty-four hours of moving. The person must also send written notice within ten days of the change of address in the new county to the county sheriff with whom the person last registered. The county sheriff with whom the person last registered shall promptly forward the information concerning the change of address to the county sheriff for the county of the person's new residence. Upon receipt of notice of change of address to a new state, the county sheriff shall promptly forward the information regarding the change of address to the

deadlines differentiated upon an offender's residential status.[4] Peterson argued that these subsections constituted alternative means for committing the crime of failure to register, which must be specified in the charging document. Moreover, he argued that, because the State must prove these facts beyond a reasonable doubt to obtain a conviction, they were essential elements of the crime.

We disagreed, explaining that "[t]he statute imposes one duty: to register with the sheriff." Id. at 677-78. We further explained that the subsections pertaining to the nature and contents of registration, an offender's residential status, and the applicable registration deadlines "merely articulate the definition of continuing compliance. They do not define the elements or create alternative means of committing the crime of failure to register as a sex offender." Id.

We reached a similar conclusion in State v. Bennett, 154 Wn. App. 202, 224 P.3d 849 (2010). There, we considered whether the to convict instruction included all essential elements of the charged crime: failure to register under former RCW 9A.44.130. Bennett raised the same argument advanced in

---

agency designated by the new state as the state's offender registration agency.

...

> (6)(a) Any person required to register under this section who lacks a fixed residence shall provide written notice to the sheriff of the county where he or she last registered within forty-eight hours excluding weekends and holidays after ceasing to have a fixed residence. The notice shall include the information required by subsection (3)(b) of this section, except the photograph and fingerprints. The county sheriff may, for reasonable cause, require the offender to provide a photograph and fingerprints. The sheriff shall forward this information to the sheriff of the county in which the person intends to reside, if the person intends to reside in another county. Laws of 2003, ch. 215 § 1.

[4] Subsections (5)(a) and (6)(a) of former RCW 9A.44.130 have been recodified at subsections (5)(a) and (b), respectively.

Peterson. Id. at 206-08. Once again, we concluded that the residential status and registration deadlines set forth in subsections (5)(a) and (6)(a) of former RCW 9A.44.130 were not essential elements of the crime of failure to register. Id. at 208. As such, Bennett's to convict instruction was not deficient for failure to include these elements. Id.

E.L.-D. does not attempt to distinguish these cases. Rather, he argues that the failure to register within 72 hours is an essential element of the crime because the State must prove it beyond a reasonable doubt. But the mere fact that the State bears the burden of proving a fact at trial does not automatically make that fact an essential element of the crime. State v. Allen, 176 Wn.2d 611, 628-30, 294 P.3d 679 (2013) (holding, in a felony harassment case, that even though the State bore the burden of proving a "true threat" in order to obtain a conviction, the requirement of a "true threat," was not an essential element of the crime and need not be contained in the charging document); State v. Lorenz, 152 Wn.2d 22, 31, 93 P.3d 133 (2004) (explaining, in a child molestation case, that even though touching for the purpose of "sexual gratification" must be proved beyond a reasonable doubt to sustain a conviction, it is not an essential element of the crime of child molestation and need not be included in the "to convict" instruction). Moreover, the argument ignores our holdings in Peterson and Bennett that the registration deadline is definitional, and the well-established rule that the State need not include definitions of elements in the charging document. See, State v. Johnson, 180 Wn.2d 295, 302, 325 P.3d 135 (2014) ("We have

6

never held that the information must also include definitions of essential elements. . . .")

Peterson and Bennett make clear that the sole essential element of the crime of failure to register is violation of the duty to register with the sheriff. The subsections of the statute that establish the deadlines for meeting this duty merely articulate the definition of continuing compliance. Peterson, 145 Wn. App. at 678. Accordingly, we reject E.Z.L.-D.'s argument that the registration deadline is an essential element of the crime that must be included in the charging document.

### Statement of Additional Grounds

In a statement of additional grounds (SAG), E.Z.L.-D. argues that his conviction should be reversed because the State failed to prove he knew of his obligation to register. He appears to claim that he signed the written notice of his obligation to register without reading it and that he was not orally advised of the obligation. But, at trial, E.Z.L.-D. stipulated that he "was put on notice and knew of [his] duty to register as a sex offender and of the duty to notify the Snohomish County Sherriff's Office of any change of residence address." CP at 33; see also, (10/22/13) VRP at 61-62. Additionally, the trial court heard undisputed testimony from Detective Joseph Beard that E.L.-D. signed a form containing a notification of the applicable registration requirements and was orally advised of its contents. This form was admitted into evidence at trial. Thus, substantial evidence supports the trial court's conclusion that E.Z.L.-D.'s violation was knowing.

7

E.Z.L.-D. also contends that his conviction should be reversed because, as a ward of the State, "my social worker kept moving me to different places." SAG at 1. Although this may be true, we do not see how it negates the State's proof as to any element of the charged crime.

Affirm.

WE CONCUR:

Spearman, C.J.

Dwyer, J.

Cox, J.