IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34976-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICK GREGORY NICHOLS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Nick Nichols, a long haul trucker, was convicted following a bench trial of failure to register as a sex offender. This was despite his registration in Clark County after he arranged to live there, when in town, with a longtime friend. Although the trial court described the case as one in which Mr. Nichols was not intentionally trying to dodge or evade the law, it found that he had information that would lead a reasonable person to know that his living arrangement did not qualify as a "fixed residence," which is the basis on which he registered. It sentenced him to only the two days served following his arrest. Because sufficient evidence supports the trial court's findings of fact and its findings support its conclusions of law, we affirm.

FACTS AND PROCEDURAL BACKGROUND

As the result of a 1991 conviction for attempted first degree rape, Nick Nichols is required to register as a sex offender. During the time Mr. Nichols owned a home in Aberdeen, he listed it as his fixed residence on his sex offender registration with the Grays Harbor County Sheriff. In 2014, in light of the fact that his work took him out of state between 21 and 24 days each month, he decided to sell the home in order to buy a truck.

Still wanting a home base in Washington, Mr. Nichols contacted his lifelong friend Joseph Brown, and asked if he could use Mr. Brown's apartment as his address and stay there when he was in the area. Mr. Brown agreed, refusing Mr. Nichols's offer to pay rent or utilities. In December 2014, Mr. Nichols completed a sex offender registration form with the Clark County Sheriff's Office, listing Mr. Brown's Vancouver address as his fixed residence. Mr. Nichols also used the Vancouver address on his vehicle title, on his tax return, and as the physical address connected to his post office box. He moved several personal items to the property, including his personal pickup truck, a kayak, some clothing, and a small cooler.

About three months later, on March 14, 2015, Clark County Sheriff's Detective David Jenson was assigned to sex offender monitoring, checking to make sure that offenders were living at their reported addresses. One of his stops was to Mr. Brown's apartment. Mr. Nichols was not present. Mr. Brown told the detective that Mr. Nichols

2

did not live with him, but occasionally stayed the night at the residence, sleeping in a lounge chair. Mr. Brown said that when Mr. Nichols was in town, they would eat out or have take-out together. The detective had Mr. Brown sign a statement affirming that Mr. Nichols did not reside at his address. At trial, Mr. Brown acknowledged that months before the detective's visit he agreed to allow Mr. Nichols to use his address as his "home base in Vancouver." Report of Proceedings (RP) at 53. He testified that what he meant when he told Detective Jenson that Mr. Nichols didn't live there was "he don't stay there and live and bathe and have his room and everything there." RP at 56.

The State charged Mr. Nichols with failure to register as a sex offender, based on the fact that he registered as a sex offender with a fixed residence, when he should have registered as a sex offender who lacks a fixed residence. "A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he . . . is registered."[1] RCW 9A.44.130(6)(b).

---

[1] Testimony at trial from Kevin McVicker, an officer at the sex offender registration unit, established that there are alternatives to the in person reporting the statutory language requires:

Q:  So if you could tell us, Mr. McVicker, what is the procedure if somebody lacks a fixed residence but they're not necessarily going to be in the county every week?

A:  We have truck drivers and we have people that work in carnivals and things like that, and what we—if they aren't able to make it in personally because their job takes them out of state or whatever, we will have them email us or fax us a copy of the locations where they've stayed the seven, seven prior days.

3

At the conclusion of a bench trial, the trial court found Mr. Nichols guilty. It later entered written findings of fact and conclusions of law. It sentenced Mr. Nichols to 2 days confinement, with credit for 2 days of time served, and 12 months of community custody. Mr. Nichols appeals.

ANALYSIS

Following a bench trial, appellate review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* We treat unchallenged findings of fact supported by substantial evidence as verities on appeal. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

RAP 10.3(g) requires a separate assignment of error for each finding of fact a party contends was improperly made, with reference to the finding by number. Although

---

RP at 35. The sex offender registration form that Mr. Nichols signed could be improved; it does not presently include the statutory definition of "fixed residence" or identify Mr. Nichols's situation as one in which a person lacks a fixed residence. See Clerk's Papers at 8 for the front side of the form; the back side is accessible at https://www.clark.wa.gov/ sites/default/files/dept/files/sheriff/documents/SOR%20Form-Requirements%20of%20the%20Law.pdf [https://perma.cc/Y64R-AFW5].

Mr. Nichols did not comply with the requirement, he argues that conviction "requires proof that Mr. Nichols lacked a fixed residence" and asserts "Mr. Nichols *had* a fixed residence." Br. of Appellant at 11 (emphasis added). A failure to fully comply with RAP 10.3 does not prevent us from considering a party's argument when the brief clearly discloses what action is considered erroneous and the opposing party is presented with no difficulty in responding to the issue. *State v. Clark*, 53 Wn. App. 120, 123, 765 P.2d 916 (1988). We review Mr. Nichols' challenge as assigning error to the court's third legal conclusion: that Mr. Brown's Vancouver apartment "was not the defendant's fixed residence" during the relevant time period. Clerk's Papers (CP) at 37.

Mr. Nichols argues that each month he returned home from his travels to Mr. Brown's residence, he had access to it, he could sleep there, he took meals there, he kept personal belongings there, he identified it as his residence address for all purposes, and he was there when Clark County deputies came to arrest him. Br. of Appellant at 12-13. He likens his case to *State v. Stratton*, 130 Wn. App. 760, 124 P.3d 660 (2005), where this court found that an offender was not guilty of failing to register.

In *Stratton*, as a result of defaulting on his mortgage payments, the defendant was required to move out of his home. 130 Wn. App. at 762. He did so, but continued to sleep in his car in the home's driveway, and to receive and use mail, telephone, and internet service there. *Id.* at 766. After deputies saw the home was for sale and noted it had been emptied of furniture, the defendant was charged with and convicted of failure to

5

register as a sex offender for failing to notify the county sheriff that he had ceased to have a fixed residence. *Id.* at 763.

In reversing Stratton's conviction, the court looked to the dictionary definitions of "fixed" and "residence," since the statute at the time did not define "fixed residence." *Id.* at 765. The dictionary defined "residence" in part as "the *place* where one actually lives or has his home distinguished from his technical domicile . . . : a temporary or permanent dwelling *place*, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit . . . : a *building* used as a home." *Id.* at 765 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (1969)). The court found this definition ambiguous: "It could simply indicate a place where one actually lives, not necessarily limited to a building, or it could be limited to a building used as a home." *Id.* at 765 (emphasis omitted). Accordingly, it applied the rule of lenity, and found that the purposes of the statute were fulfilled by law enforcement's ability to contact him at the home "by mail, by phone, or in person in the evenings," and that the defendant maintained a fixed residence because he intended to return to the home daily and had no definite departure date. *Id.*

*Stratton*'s analysis is unhelpful because the legislature has since provided a statutory definition of "fixed residence" that differs significantly from the meaning

6

derived from dictionary definitions in that case. LAWS OF 2011, ch. 337, § 2.[2] As the trial court recited in its findings, the statutory definition now requires that a fixed residence be a building "lawfully and habitually use[d] as living quarters a majority of the week." CP at 36-37 (quoting RCW 9A.44.128(5)).[3] Looking to the plain language of the statute, Mr. Brown's apartment was clearly not Mr. Nichols's fixed residence because, as the court found, Mr. Nichols "is typically outside the State of Washington while on his job as a truck driver for 3 weeks to 26 days per month." CP at 36 (Finding of Fact 3). That unchallenged finding is a verity on appeal.

---

[2] Likely because of the absence of a statutory definition earlier, this was Mr. Nichols's first conviction for failure to register as a sex offender. He registered as a sex offender with a fixed address when he lived in Aberdeen, and even though he was out of town for the same amount of time per month, his registration was not challenged. Mr. Nichols testified that the only issue with Grays Harbor County was that they occasionally observed he was "a hard man to find because [he] was never home." RP at 87.

[3] The full statutory definition states:

a building that a person lawfully and habitually uses as living quarters a majority of the week. Uses as living quarters means to conduct activities consistent with the common understanding of residing, such as sleeping; eating; keeping personal belongings; receiving mail; and paying utilities, rent, or mortgage. A nonpermanent structure including, but not limited to, a motor home, travel trailer, camper, or boat may qualify as a residence provided it is lawfully and habitually used as living quarters a majority of the week, primarily kept at one location with a physical address, and the location it is kept at is either owned or rented by the person or used by the person with the permission of the owner or renter. A shelter program may qualify as a residence provided it is a shelter program designed to provide temporary living accommodations for the homeless, provides an offender with a personally assigned living space, and the offender is permitted to store belongings in the living space.

7

No. 34976-4-III
*State v. Nichols*

The trial court's conclusion that Mr. Nichols lacked a fixed residence is not erroneous.

Mr. Nichols asks this court to waive appellate costs if he does not substantially prevail on appeal. The State has notified us it does not intend to seek costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, A.C.J.

8