230 P.3d 1087 (2010)
In re the Interest of J.R.
No. 27858-1-III.
Court of Appeals of Washington, Division 3.
May 11, 2010.
*1088 Eric J. Nielsen, Casey Grannis, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
*1089 Kimberly A. Loranz, Office of the Attorney General, Yakima, WA, Thomas W. Mcgirk, Attorney General's Office, Spokane, WA, for Respondent.
¶ 1 KULIK, C.J.
¶ 2 J.R. appeals a Yakima County Juvenile Court order denying his petition for reinstatement of his mother's parental rights under RCW 13.34.215. He contends the court misinterpreted this statute when it concluded that J.R. failed to meet the statutory criteria for filing a reinstatement petition because he had achieved a permanent placement within three years of the parent's termination order. In the alternative, J.R. contends that if this court agrees with the juvenile court's interpretation, the statute violates his rights to substantive due process and equal protection. We conclude RCW 13.34.215 is unambiguous and does not allow J.R. to petition for reinstatement of parental rights. We also reject J.R.'s claim that the statute violates his substantive due process and equal protection rights. Accordingly, we affirm.

FACTS
¶ 3 J.R. was born on February 28, 1993. Two and one-half months after his mother's voluntary relinquishment of parental rights in 1998, the court ordered a guardianship for J.R. The guardianship placed J.R. with his grandmother and another relative. The guardianship was in place for 10 years. The juvenile court terminated the guardianship upon request of the guardians.
¶ 4 On December 2, 2008, the then 15-year-old J.R. filed a petition for reinstatement of his mother's parental rights. Pursuant to RCW 13.34.215,[1] J.R. alleged that he had previously been found to be dependent, that he was at least 12 years of age, that his permanency plan of guardianship had not been achieved, and that more than 3 years had passed since entry of the juvenile court order terminating his parental rights. According to J.R.'s petition, his mother was rehabilitated and wanted the court to place J.R. in her home.
¶ 5 At the threshold hearing on the matter, the State argued that J.R. did not meet the statutory criteria for filing a reinstatement petition. Specifically, it contended that RCW 13.34.215 barred J.R.'s petition because he achieved permanency when he was placed in a dependency guardianship within three years of the order terminating parental rights. J.R. argued that he had not achieved permanency because the guardianship ultimately failed.
¶ 6 The juvenile court recognized that reinstatement might be in J.R.'s best interest, but found that J.R. had "not met the criteria to file a petition under RCW 13.34.215(1)(c) as [the] child did achieve a permanent plan of guardianship from 1998-2008 and the plain meaning of the statute is clear & unambiguous." Clerk's Papers at 19 (emphasis added).

ANALYSIS
¶ 7 The issue before us is whether RCW 13.34.215(1)(c) applies only to dependent children whose permanency plans were not achieved within three years of a final order of termination.
¶ 8 RCW 13.34.215 was enacted in 2007 as Engrossed Substitute House Bill 1624. The statute provides a process for a child to petition the juvenile court to reinstate his or her parent's parental rights if certain conditions are met. RCW 13.34.215(1). The process involves three steps: (1) an initial threshold hearing (RCW 13.34.215(4)[2]); (2) if *1090 specific threshold criteria are met, the juvenile court addresses the merits of the petition (RCW 13.34.215(6)[3]); and (3) if specific criteria on the merits are proven, then the child is placed in the home and custody of the parent for a specific period of time with monitoring (RCW 13.34.215(8)(a)[4]). The ultimate goal is reinstating the parent-child relationship and dismissal of the dependency. RCW 13.34.215(8).
¶ 9 The subsection at issue here provides that a child may petition for reinstatement of parental rights if "[t]he child has not achieved his or her permanency plan within three years of a final order of termination." RCW 13.34.215(1)(c).
¶ 10 J.R. contends the statute allows a dependent child to petition for reinstatement of parental rights if the child loses a permanent placement three years after the termination of parental rights. He argues that the trial court's interpretation overlooks his legislatively recognized right to a permanent home. He also contends that he did not achieve a permanency plan because the guardianship ultimately failed.
¶ 11 The State counters that RCW 13.34.215(1)(c) is unambiguous and therefore it is unnecessary to look beyond the statute's plain language to determine the legislature's intent. It argues, "The statute is facially clear; either a permanency plan has been achieved within three years of a final order of termination or it has not been." Br. of Resp't at 6. The State points out that J.R.'s permanency plan was achieved within three months of the final order of termination and therefore J.R. does not fall within the narrow category of dependent children who may file for reinstatement of parental rights.
¶ 12 This is a case of first impression with no Washington authority on point. We review issues of statutory interpretation de novo. Cerrillo v. Esparza, 158 Wash.2d 194, 199, 142 P.3d 155 (2006). When a statute is unambiguous, we derive the legislature's intent from the plain language alone. State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002); State v. Thorne, 129 Wash.2d 736, 762-63, 921 P.2d 514 (1996). A statute is ambiguous if it can be interpreted in more than one way. Vashon Island Comm. For Self-Gov't v. Wash. State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995).
¶ 13 Here, the statute's language is facially clear and not subject to more than one reasonable interpretation. By its plain language it applies to the class of children who have failed to achieve permanency plans within three years of a termination order. When a statute is clear on its face, courts must give effect to its plain meaning and should assume the legislature means exactly what it says. "The court may not add language to a clear statute, even if it believes the Legislature intended something else but failed to express it adequately." State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997).
¶ 14 Because the statute is clear we need not turn to legislative history to assist us with its interpretation. Nevertheless, the legislative history of the enactment supports our interpretation of the statute. This history indicates that the intent of the new legislation was to provide a process for reinstatement of parental rights for children who lacked a permanent home within three years of the termination of parental rights.
¶ 15 For example, the Senate Bill Report states: "There's no reason to keep kids lingering in foster care, if they can go home and be safe there. In addition, kids should be able to petition for reunification with their *1091 birth families if their permanency plans have not been achieved within three years." SENATE COMM. ON HUMAN SERVS. & CORR. AND COMM. ON WAYS & MEANS, S.B. REP. on Engrossed Substitute H.B. 1624, at 5, 60th Leg., Reg. Sess. (Wash. 2007).
¶ 16 Additionally, the House Bill Report states:
There have been some circumstances in which children have been placed in care and have not thrived. We have seen children who have no permanency and no hope for adoption. . . . Children who want to go to a parent who wants them home, and can take care of them, should have a legal process to allow that to happen. The bill provides another avenue in select cases for the approximately 250 children who are legally free and age out of the foster care system each year.
HOUSE COMM. ON EARLY LEARNING & CHILDREN'S SERVS., H.B. REP. on H.B. 1624, at 4-5, 60th Leg., Reg. Sess. (Wash. 2007).
¶ 17 In view of the plain language of the statute and the legislative history, J.R. does not fit within the class of children to which the statute applies. His permanency plan was entered within two and one-half months of the termination of his mother's parental rights. He did not lingering in foster care. Instead, he lived with his grandmother and another relative in a stable and permanent environment for over 10 years. Because J.R. achieved a permanency plan well within three years of the termination of parental rights, he does not meet the statutory criteria for filing a reinstatement petition.
¶ 18 Further, contrary to J.R.'s argument, he achieved a permanency plan. Under RCW 13.34.136(2)(a) a "permanency plan of care" includes guardianships. Additionally, the Final Bill Report provides: "The permanency plan will contain the desired goal for the child which may include a plan to return the child home, adoption, long-term placement, or guardianship, including dependency guardianship." Final B. Rep. on Engrossed Substitute H.B. 1624, at 1, 60th Leg., Reg. Sess. (Wash. 2007).
¶ 19 RCW 13.34.215(7) provides guidance in determining whether a permanency plan has been achieved. It states that in determining whether a child has achieved a permanency plan "the court shall review . . . information related to any efforts to achieve the permanency plan including efforts to achieve adoption or a permanent guardianship." J.R. asserts that under this section "[p]ermanent means permanent." Br. of Appellant at 16. The State counters that permanent is not meant to mean "forever" but simply means "intended to last." Br. of Resp't at 10.
¶ 20 Federal law supports the State's position. 42 U.S.C. § 675(7) states that "[t]he term `legal guardianship' means a judicially created relationship between child and caretaker which is intended to be permanent." (Emphasis added.) Additionally, we may resort to a dictionary definition to determine the common meaning of a term if it is not defined in a statute. Watson, 146 Wash.2d at 956, 51 P.3d 66. Webster's dictionary defines "permanent" as "fixed or intended to be fixed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (1993) (emphasis added).
¶ 21 Applying the common meaning of the word "permanent" here, J.R. achieved a permanent guardianship. It was established pursuant to his permanency plan and was intended to be permanent under the terms of the statute.
¶ 22 Essentially, J.R. is arguing that if a permanency plan is achieved and then fails many years after the fact, RCW 13.34.215 provides a process for reinstatement of parental rights. But this is not what the statute says. We emphasize that if the legislature had intended the reinstatement statute to include children who lose a permanent placement many years after termination of parental rights, it would have explicitly provided for such a situation. Nothing in the statute or legislative history indicates that this was the legislature's intent. As discussed, the legislative history simply indicates that the State's purpose is to allow children who lack a permanent home within three years of the termination of parental rights to achieve a permanent home by reuniting with a reformed parent. Accordingly, *1092 we conclude the trial court correctly interpreted the statute.
¶ 23 Next, J.R. contends that RCW 13.34.215 as applied to the facts of this case violates substantive due process because "it deprives [J.R.] of obtaining a permanent home and reunifying with a fit parent without a legitimate reason." Br. of Appellant at 25. He argues that the statute is irrational because it runs contrary to the overriding legislative intent to protect a child's right to a stable and permanent home.
¶ 24 J.R. did not challenge RCW 13.34.215 on constitutional grounds below. However, constitutional challenges to statutes may be raised for the first time on appeal under RAP 2.5(a)(3). Wenatchee Reclamation Dist. v. Mustell, 35 Wash.App. 113, 119, 665 P.2d 909 (1983), aff'd, 102 Wash.2d 721, 684 P.2d 1275 (1984).
¶ 25 A legislative enactment is presumed to be constitutional. State v. Coria, 120 Wash.2d 156, 163, 839 P.2d 890 (1992). Therefore, a party challenging a statute has the burden of proving it is unconstitutional beyond a reasonable doubt. In re Custody of Osborne, 119 Wash.App. 133, 147, 79 P.3d 465 (2003). We review constitutional challenges de novo. Amunrud v. Bd. of Appeals, 158 Wash.2d 208, 215, 143 P.3d 571 (2006).
¶ 26 Under the Washington and United States Constitutions, no person may be deprived of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV § 1; WASH. CONST. art. I, § 3. "Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures." Amunrud, 158 Wash.2d at 218-19, 143 P.3d 571. "When state action does not affect a fundamental right, the proper standard of review is rational basis." Id. at 222, 143 P.3d 571. Under this test a party challenging the constitutionality of a statute must show that the law is wholly unrelated to the achievement of a legitimate state purpose. Seeley v. State, 132 Wash.2d 776, 795, 940 P.2d 604 (1997).
¶ 27 J.R. characterizes the juvenile court's denial of his petition as an arbitrary infringement on his rights to a stable and permanent home. His contention is not supported by the facts or the law. The juvenile court simply found that J.R. did not meet the statutory threshold for having his petition heard. It did not deny J.R. a right to a permanent home. In fact, the court indicated that the State would continue to explore permanency plan options for him.
¶ 28 J.R. also overlooks the fact that he has no right, fundamental or otherwise, to reinstatement of previously extinguished parental rights. See RCW 13.34.200(1) ("Upon the termination of parental rights pursuant to RCW 13.34.180, all rights, powers, privileges, immunities, duties, and obligations . . . between the child and parent shall be severed."). As the State correctly points out, the statute does not create a right to reinstatement of parental rights, it simply provides a mechanism for foster children who have been lingering in foster care to pursue reinstatement of their parents' rights. As such, it is rationally related to the legitimate State interest of reducing the number of children in foster care who have not achieved a permanent placement. We therefore conclude that J.R. fails to meet his burden of proving that RCW 13.34.215 is unconstitutional beyond a reasonable doubt.
¶ 29 Finally, J.R. contends that the application of RCW 13.34.215 in this case violates his right to equal protection. He contends the statute draws an arbitrary distinction between those children who fail to obtain permanency within three years of a final order of termination and those who obtain a permanent home but which is disrupted before age 18. His argument is not persuasive.
¶ 30 The equal protection clauses of the state and federal constitutions ensure that persons similarly situated with respect to the legitimate purpose of the law receive equal treatment. State v. Manussier, 129 Wash.2d 652, 672, 921 P.2d 473 (1996); Coria, 120 Wash.2d at 169, 839 P.2d 890. A denial of equal protection may occur when a law is administered in a way that discriminates between similarly situated persons. *1093 Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 811, 756 P.2d 736 (1988). However, "no equal protection claim will stand unless the complaining person can first establish that he or she is similarly situated with other persons." State v. Handley, 115 Wash.2d 275, 289-90, 796 P.2d 1266 (1990). Thus, we will not entertain an equal protection claim unless a party establishes that he is situated similarly to others in a class. Id.; Stone, 110 Wash.2d at 811-12, 756 P.2d 736.
¶ 31 J.R. fails to establish that he is a member of a similarly situated class. J.R. is not a foster child who has been lingering in foster care for at least three years after termination of his parent's rights without an achieved permanency plan. He achieved a permanency plan within 2½ months of termination and was in a stable placement for 10 years. J.R. fails to establish that he is similarly situated to those children included in the statute. Accordingly, no equal protection rights are implicated here.
¶ 32 We conclude the juvenile court did not err in dismissing J.R.'s reinstatement petition for failure to meet the statutory requirements of RCW 13.34.215. We therefore affirm.
WE CONCUR: BROWN and KORSMO, JJ.
KORSMO, J. (concurring).
¶ 33 The majority opinion correctly states the points necessary to resolve this case: (1) the plain language of the statute, which does not need construction, excludes J.R.; (2) his constitutional challenges fail. As to the latter, it is clear that the Legislature is not required to redress all aspects of a problem. An underinclusive approach does not necessarily create equal protection difficulties. E.g., Campbell v. Dep't of Soc. & Health Servs., 150 Wash.2d 881, 901, 83 P.3d 999 (2004) (age limit on services for children with developmental disabilities); Seeley v. State, 132 Wash.2d 776, 806, 940 P.2d 604 (1997) (classification of marijuana as schedule I substance while other drugs not so classified). For these reasons, I agree with and have signed the majority opinion.
¶ 34 I write separately solely to explain that the language used by the Legislature does not live up to its stated goal. The legislative history indicates that the 2008 amendment to RCW 13.34.215(1) was supposed to help address the problem of dependent children who are not placed and would otherwise linger in the system without a permanent plan until they age out. In the rare circumstance where the children have a biological parent willing and able to take care of them, the amendment allows for the possibility of reinstatement of parental rights. Unfortunately, the language used partially contradicts that purpose.
¶ 35 The problem arises because subsection (1)(c)[1] ties the possibility of reinstatement to the timing of the permanency plan rather than whether or not one is (or ever was) in place. For example, a permanency plan could be entered 37 months after the termination of parental rights. Under the plain language of existing subsection (1)(c), a child still could seek to have parental rights reinstated even though there was a permanency plan in place. That is not what the Legislature intended.
¶ 36 It appears that the Legislature wanted a minimum period of time, in this instance 36 months, to pass before a child could seek reinstatement because no permanency plan had been achieved. A clearer way to state that would be to break subsection (c) into two parts, perhaps as follows:
(c)(i) the child has not achieved his or her permanency plan; (ii) three years have passed since the final order of termination.
¶ 37 This approach breaks the nexus between the timing of the permanency plan and the possibility of reinstatement. The Legislature could also then clarify if it wanted children in J.R.'s situation who once had a permanency plan, but no longer did, to qualify for reinstatement of parental rights. It must decide whether the benefits of the expanded approach outweigh any drawbacks *1094 such as the possibility that a child would sabotage a permanency plan in hopes of reunion with a parent. That policy decision is for the legislative, not judicial, branch of our government.
¶ 38 With this request for clarification from the Legislature, I agree that the judgment should be affirmed.
NOTES
[1] "(1) A child may petition the juvenile court to reinstate the previously terminated parental rights of his or her parent under the following circumstances:

"(a) The child was previously found to be a dependent child under this chapter;
"(b) The child's parent's rights were terminated in a proceeding under this chapter;
"(c) The child has not achieved his or her permanency plan within three years of a final order of termination; and
"(d) The child must be at least twelve years old at the time the petition is filed."
RCW 13.34.215(1)(a)-(d).
[2] "If, after a threshold hearing to consider the parent's apparent fitness and interest in reinstatement of parental rights, the court finds by a preponderance of the evidence that the best interests of the child may be served by reinstatement of parental rights, the juvenile court shall order that a hearing on the merits of the petition be held." RCW 13.34.215(4).
[3] "The juvenile court shall conditionally grant the petition if it finds by clear and convincing evidence that the child has not achieved his or her permanency plan and is not likely to imminently achieve his or her permanency plan and that reinstatement of parental rights is in the child's best interest." RCW 13.34.215(6).
[4] "If the court conditionally grants the petition under subsection (6) of this section, the case will be continued for six months and a temporary order of reinstatement entered. During this period, the child shall be placed in the custody of the parent." RCW 13.34.215(8)(a).
[1] "The child has not achieved his or her permanency plan within three years of a final order of termination." RCW 13.34.215(1)(c).