COLBERT, J.
T1 This matter presents an issue of first impression which requires construction of section 1-4-909(A)(8) of the Oklahoma Children's Code, Okla. Stat. tit. 10A, §§ 1-1-101 through 1-9-122 (2011 & Supp.2014). Because the lower courts failed to construe the statute in a manner consistent with the rules of construction and the legislative intent stated in the Children's Code, the cause must be remanded to the trial court.
FACTS AND PROCEDURAL HISTORY
T2 Following a jury trial, the parental rights of T.H.'s mother were terminated by an order filed June 9, 2000. TH. was three years old. Within one year, she was adopted and the decree was filed May 14, 2001. T.H. lived with her adoptive parents until she was 15 years old, when she disclosed that her adoptive father had been sexually abusing her since she was five or six years of age. A deprived petition was filed, both adoptive parents consented to termination of their parental rights, and such determination was memorialized in orders entered March 6, 2013. TH. filed an application to reinstate the parental rights of her biological mother on April 23, 2013.[1] The trial court denied the application and the Court of Civil Appeals affirmed.
€ 3 In 2009, the Oklahoma Legislature enacted section 1-4-909, Okla. Stat. tit. 10A (Supp.2009), which allows a child to request a court to reinstate previously terminated parental rights under specified circumstances. T.H. filed an application based on section 1-4-909 and she alleged her circumstances satisfied all criteria for reinstatement of her biological mother's parental rights. The State of Oklahoma objected arguing that one element of the statute had not been met. The trial court agreed with the State and entered an order denying the application. The Court of Civil Appeals affirmed. It held the statute to be ambiguous but applied an *1091 "as written" literal construction of the statute to hold that the application was properly denied.: This Court granted certiorari review. -
¶ 4 The statute provides that a child may request to reinstate the previously terminated parental rights of his or her parent under the following cireumstances:
1. The child was previously found to be a deprived child;
2. The parent's rights were terminated in a proceeding under Title 10A of the Oklahoma Statutes;
3. The child has not achieved his or her permanency plan within three (8) years of a final order of termination; and
4. The child is at least fifteen (15) years old at the time the application is filed.
Id. § 1-4-909(A). The dispute in this matter concerns element three. The parties disagree about whether TH. achieved her permanency plan within three years of a final order of termination. It is a question requiring interpretation of a statute, a task that appellate courts perform without any deference to the trial court. Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654.
ANALYSIS
¶ 5 As a preliminary matter, TH. argues the trial court erroneously utilized summary process to dispose of her application. "Summary judgment is not applicable to juvenile proceedings." In re Christina T., 1979 OK 9, ¶ 9, 590 P.2d 189, 191. The State never filed a motion attaching evidentiary material in favor of its position. The briefs filed in the case were requested by the trial court to aid it in determining whether TH. had satisfied the application requirements of section 1-4-909. Even though the trial court's order bears language resembling a summary judgment, the proceedings were directed at testing the legal sufficiency of T.H.'s request for relief, not the existence of evidentiary material to warrant a hearing on the merits. Darrow v. Integris Health, Inc., 2008 OK 1, ¶ 7, 176 P.3d 1204, 1208. Therefore, the State's motion was essentially a motion to dismiss and the trial court's order denying the application for failure to meet the prescribed conditions was not an improper grant of summary judgment.
¶ 6 Resolution of the primary issue in this matter depends on the meaning of the phrase "has not achieved his or her perma-neney plan within three (3) years of a final order of termination." It is a question of first impression in Oklahoma. TH. argues the statute is ambiguous as applied to the facts of her case in that the phrases, "has not achieved his or her permanency plan" and "a final order of termination," could have more than one meaning. TH. asserts the phrase "has not achieved" could mean that a child has never achieved permanency or that a child is without permanency at the time of the application. She notes that within three years of her adoption, permanency failed as a result of the sexual abuse she began to suffer at the hands of her adoptive father. She contends the former interpretation would thwart the legislative intent of Title 10A that children need and have a right to permanency. She argues that statutes are to be liberally construed with a view to effect their objects and promote justice. Okla. Stat. tit. 25, § 29 (2011).
¶ 7 T.H. asserts that the phrase "a final order of termination" could mean the most recent termination order or any final termination order. She contends the former would thwart legislative intent by prohibiting a child from seeking reinstatement of a now-fit parent's parental rights if the second final termination order, constituting failure of a "permanency" plan, were within three years of the child's eighteenth birthday.
¶ 8 In response, State argues that TH. achieved permanency through adoption within three years of the termination of the rights of her biological mother, and this status is not changed by the fact her adoptive parents relinquished their parental rights twelve years later. State argues the statute is unambiguous and under its plain language, T.H. is not eligible to apply for reinstatement of her mother's parental rights.
¶ 9 This Court has summarized the role of appellate courts in construing statutes:
*1092 The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of a statute. When legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, we must apply rules of statutory construction. The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. Whether language is ambiguous is a question of law. In construing ambiguous statutory language, we do not limit ourselves to the consideration of a single word or phrase. Rather, we look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying that intent.
In re J.L.M., 2005 OK 15, ¶ 5, 109 P.3d 336, 338 (citations omitted). Section 1-4-909(A)(8) is susceptible to more than one reasonable interpretation and therefore this Court must examine other provisions of the Oklahoma Children's Code to. ascertain legislative intent. In doing so, this Court is cognizant that the Code "is to be liberally construed to carry out its purpose, which includes unifying and strengthening family ties whenever possible in children's best interest and for the safety and health of children." In re BTW, 2010 OK 69, ¶ 13, 241 P.3d 199, 205-206.
T10 Among the provisions of the Oklahoma Children's Code is a well-developed and unequivocal statement of the legislative intent and purpose of the Code found at section § 1-1-1022. That statement of intent and purpose informs the proper construction of section 1-4-909(A)(8). The Code recognizes that "[wlhen it is necessary to remove a child from a parent, the child is entitled to a permanent home and to be placed in the least restrictive environment to meet the needs of the child." Okla. Stat. tit. 10A, § 1-I-102(A)(2) (2011 & Supp.2012). Further, "It is the purpose of the laws relating to children alleged or found to be deprived to: ... [rlee-ognize that permanency is in the best interests of the child." Id. § 1-1-102(B)(6). "Whenever it is necessary for a child to be placed outside the home. pursuant to the Oklahoma Children's Code, it is the intent of the Legislature that: ... [plermanent placement is achieved as soon as possible." Id. § 1-1-102(C)(4). Finally, in all proceedings within the Oklahoma Children's Code, the paramount consideration is the best interests of the child. Id. § 1-1-102(B).
{11 In view of the Legislature's clearly expressed intent in section 1-1-102, the ambiguity found in section 1-4-909(A)(8) must be resolved in favor of permanent placement with a now-reformed biological parent as soon as possible. "[It is the purpose of the laws relating to children alleged or found to be deprived to ... [plreserve, unify, and strengthen the family ties of the child whenever possible when in the best interests of the child to do so." Id. § 1-1-102(B)B). Nothing in the Legislature's clearly expressed intent concerning the Oklahoma Children's Code supports the assertion that a child must wait three years to have the parental rights of a now-fit parent restored and thus provide permanency to the minor child. This Court holds the phrase "has not achieved his or her permanency plan" includes a situation where permanency through adoption or other proceedings has failed. Such a construction furthers the express intent and purposes of the Oklahoma Children's Code and avoids a conflict between its aims and the challenged provision.[2] A child should not be punished for a faulty placement that lacked permanency from the outset due to negligent placement by the State and sexual abuse by the adoptive father.
112 It is essential that section 1-4-909(A)(8) be construed in a manner consistent with the Oklahoma Legislature's express intent that, when a child is placed in a home, "[eélach child shall be assured the care, guidance, and supervision in a permanent home *1093 or foster home that will serve the best interests of the child including, but not limited to, the development of the moral, emotional, spiritual, mental, social, educational, and physical well-being of the child." Id. § 1-1-102(C)(1). T.H.'s application to reinstate the parental rights of her natural mother should not have been denied and this matter is remanded to the trial court for proceedings consistent with this opinion. Proper statutory construction of section 1-4-909(A)(8) makes it unnecessary to address T.H.'s constitutional claims to the denial of the application.
CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; JUDGMENT OF TRIAL COURT REVERSED; CAUSE REMANDED.
REIF, C.J., KAUGER, WATT, EDMONDSON, TAYLOR, and COLBERT, JJ., concur,.
COMBS, V.C.J., WINCHESTER and GURICH, JJ., dissent.

. During the pendency of T.H.'s application to reinstate the biological mother's parental rights, TH. filed a Motion to Establish Guardianship pursuant to section 1-7-709. The trial court subsequently awarded permanent guardianship to T.H.'s biological mother and step-father in November 2013.

. The lower courts assigned great weight in this matter to the Washington Court of Appeals decision of In re J.R., 156 Wash.App. 9, 230 P.3d 1087 (2010). That court found no ambiguity in a Washington statute that was similar to the Oklahoma provision and applied it literally to deny the application of a child whose permanent guardianship had failed. The Washington Legislature subsequently amended its statute to include children in the position of J.R. The critical difference between the Washington matter and the one before this Court is the absence, in the Washington matter, of the clearly stated and unequivocal legislative intent expressed in the Oklahoma Children's Code.